```
                UNITED STATES DISTRICT COURT
                FOR THE DISTRICT OF COLUMBIA

  * * * * * * * * * * * * * * * *
UNITED STATES OF AMERICA,        ) Criminal Action
                                 ) No. 16-229
vs.                              )
                                 )
RUBEN OSEGUERA-GONZALEZ,         ) May 22, 2020
            Defendant.           ) 3:14 p.m.
                                 ) Washington, D.C.
  * * * * * * * * * * * * * * * *
```

**TRANSCRIPT OF PROCEEDING
BEFORE THE HONORABLE BERYL A. HOWELL,
UNITED STATES DISTRICT COURT JUDGE**
*(All parties appearing via videoconference.)*

**APPEARANCES**:
FOR THE UNITED STATES:
                        ANTHONY NARDOZZI
                        BRETT REYNOLDS
                        U.S. Department of Justice
                        145 N Street, NE
                        Washington, DC 20530
                        (202) 598-2493

FOR THE DEFENDANT:   DANNY ONORATO
                     Schertler Onorato Mead & Sears
                     555 13th Street, NW, Suite 500 West
                     Washington, DC 20004
                     (202) 628-4199
                     Email: donorato@schertlerlaw.com

                     ARTURO CORSO
                     The Washington International
                     1300 Pennsylvania Avenue NW
                     Washington, DC 20004
                     (202) 628-4199
                     Email: arturo@washingtonilc.com

ALSO PRESENT:        TERESA SALAZAR,
                     Spanish Language Interpreter


Court Reporter:      Elizabeth Saint-Loth, RPR, FCRR
                     Official Court Reporter

          Proceedings reported by machine shorthand.
     Transcript produced by computer-aided transcription.

```
 1                    P R O C E E D I N G S
 2            THE COURTROOM DEPUTY:  Matter before the Court,
 3   Criminal Case No. 16-229, United States of America versus
 4   Ruben Oseguera Gonzalez.
 5            Counsel, please state your names for the record,
 6   starting with the government.
 7            MR. NARDOZZI:  Good afternoon, Your Honor.
 8   Anthony Nardozzi on behalf of the government.  I am joined
 9   today by Brett Reynolds.
10            THE COURT:  Good afternoon.
11            And for the defendant.
12            MR. ONORATO:  Good afternoon, Your Honor.
13   Dan -- Your Honor, Danny Onorato and Arturo Corso on the
14   line for defendant Ruben Oseguera Gonzalez, who is also on
15   the line.
16            THE COURT:  Yes.  Okay.  Good afternoon, everyone.
17            Good afternoon, Mr. Oseguera Gonzalez.
18            Please -- I can see Mr. Oseguera Gonzalez on the
19   video screen.  Please wave to me if you are having any
20   difficulty hearing the interpreter.  No waving, okay.
21            Wave to me if everything is good, you can hear
22   everything?
23            And he's waving to me, perfect.  Okay.
24            So why don't we start with the government letting
25   me know what the status of discovery is in the case and what
```

1     is left to turn over to defense counsel.
2              MR. NARDOZZI:  Thank you, Your Honor.
3              At this stage, the government has made five
4     discovery productions.  We've produced approximately 12,000
5     plus pages -- 12,000 and a little bit of change.
6              We are still trying to produce the official raw
7     output reports from our Title III investigation.  And, Your
8     Honor, candidly, because --
9              THE COURT:  Mr. Nardozzi, could you just slow down
10    because you're speaking very quickly and your words merge
11    over each other when you speak quickly on the
12    teleconference, so if you could slow down that would be
13    helpful.
14             You have told me that you have produced 12,000
15    pages; is that correct?
16             MR. NARDOZZI:  That is correct, Your Honor.
17             THE COURT:  Okay.
18             MR. NARDOZZI:  In addition --
19             THE COURT:  And I missed what you said after that.
20             MR. NARDOZZI:  Yes, Your Honor.  I will speak
21    slower.
22             We are attempting to produce the raw output
23    reports from our Title III investigation.  Candidly, for the
24    Court, it is difficult under the circumstances because it
25    requires access to a proprietary computer system that our

1   agents are having difficulty using easily right now.  Given
2   the social distancing guidelines, it's a difficult system
3   and cumbersome to use.
4            I spoke to our case agent yesterday.  He
5   anticipates that we can produce the full raw output reports
6   within about 90 days, but we will need about that much time
7   to produce them.
8            Outside of those output reports there will be some
9   additional seeking of discovery, but nothing that we
10  consider to be exceptionally voluminous or difficult to
11  produce within a 90-day period.
12           Your Honor --
13           THE COURT:  How much information is in the raw
14  output data, what is that?
15           MR. NARDOZZI:  Your Honor, we did produce
16  monitored translations to defense counsel, the Title III
17  investigation.  We don't anticipate that the information
18  contained in the raw outputs is going to be substantively
19  different from what we have produced to counsel.  However,
20  what we are seeking to produce is the actual contents of the
21  sealed disks which we view as being required to admit our
22  Title III wire into evidence.
23           So I have talked to defense counsel about this
24  issue and have explained that it will not be a substantive
25  difference; however, they will be large in volume.  But I

1   don't anticipate that they're going to be -- it's not going
2   to be new information, if that makes sense.
3           THE COURT: Yes. I just wanted you to clarify
4   that.
5           Okay. So, Mr. Onorato, is there anything you
6   wanted to add? I think I heard you trying to say something.
7           MR. ONORATO: Yes, Your Honor. Briefly.
8           So, first of all, Mr. Nardozzi and his team have
9   been very helpful and cooperative in this process of getting
10  us information even during COVID, so we appreciate the
11  efforts they have been making.
12          And while we have those 12,000 pages that have
13  been all translated from Spanish to English, it will be
14  critical for us to not only lay eyes on the material that
15  Mr. Nardozzi expects to produce in this meta [sic] format.
16  We, of course, want to be able to make sure that those
17  translations are accurate because, obviously, what is
18  translated from that Spanish is the evidence, and someone's
19  interpretation of that is something else.
20          THE COURT: Of course.
21          MR. ONORATO: So we agree with the government
22  that, once we get that, we will be in a better position to
23  assess for the Court kind of where things stand.
24          As the Court can surmise, we have been kind of
25  challenged because we have had no physical contact with our

1  client.  We visited him, I want to say, either March 12th or
2  March 19th, the last day we were allowed to visit him in the
3  jail down in Virginia.  And so we have not had any
4  additional physical contact with him where we could show him
5  the documents and things.  And to the extent that we have
6  been sharing information with him because we're doing it
7  either in a telephone call or through video chat, he is not
8  able to review the materials himself through no one's fault,
9  obviously, other than COVID.
10              THE COURT:  Mr. Onorato, may I just stop you for a
11  second.  I'm sorry to interrupt.  I don't want to talk over
12  you.
13              Are you able to print out materials and mail it to
14  him in a package or is that something you prefer not to do?
15              MR. ONORATO:  So I don't think that we are allowed
16  to leave copies of the material with him based on the
17  protective order that the parties reached.
18              THE COURT:  I see.
19              MR. ONORATO:  And given the sensitivity of the
20  material, I would feel -- even if we were allowed to do
21  that, I would feel that we were at a disadvantage to the
22  extent that other prisoners got a hold of it --
23              THE COURT:  Yes.
24              MR. ONORATO:  -- and if someone tries to interject
25  new information.  So for a variety of reasons --

```
1                    THE COURT:  Okay.
2                    MR. ONORATO:  -- we would prefer to be there with
3       him and go through the material with him and be able to
4       discuss the case with him in order for it to be fruitful.
5                    THE COURT:  Okay.  All right.
6                    MR. ONORATO:  I can tell the Court that we have
7       spent, on average, two days a week traveling two hours each
8       way, from the time that he was arrested, even on the
9       weekends, going to see him and going through the material,
10      and a lot of time and expense.  And we're willing to do that
11      once the jail opens back up.
12                   Everyone at the jail has been quite accommodating
13      of us coming in on the weekends and making him available to
14      us.  They have worked with our schedule, so we appreciate
15      their efforts as well.
16                   THE COURT:  And the jail is in Virginia.  I am not
17      as familiar with lockdown orders in Virginia facilities as I
18      am, of course, with the Department of Corrections here in
19      D.C.
20                   Has the jail been able to give you an estimate of
21      when they think some of the access restrictions may be
22      lifted?
23                   MR. ONORATO:  No, Your Honor.
24                   I actually have a planned trip to go to the jail
25      this Wednesday.  They will allow me to see Mr. Oseguera
```

1    through glass; we can't exchange any papers.  Just because
2    we haven't seen each other physically I plan on going there,
3    and then revisiting those issues with the jail officials.
4            My understanding is the Commonwealth of Virginia
5    is still in a, quote-unquote, lockdown until June 9th.  I
6    understand there are some restrictions that have been eased,
7    restaurants and other facilities.  But I do believe that
8    there are places where people can access -- are more
9    contagious, where there are people generally living
10   together that will at times be different.  But I don't know
11   if anyone at this point really knows how that will play out.
12           THE COURT:  Okay.  Yes.  So have the parties
13   conferred on when they'd like to set another status date in
14   this case?
15           MR. NARDOZZI:  We have, Your Honor.
16           This is Mr. Nardozzi.
17           We've agreed to a 90-day status date if the Court
18   will allow that to allow us to continue to discuss the case
19   and perhaps work out a resolution short of trial.
20           THE COURT:  All right.  So that will bring us to
21   just about the end of August.
22           Do you want to try and meet in August or do you
23   want to push this to right after Labor Day, which is late
24   this year -- that will give you plenty of time -- until
25   September 11th, which is a Friday.

```
1                MR. NARDOZZI:  That's fine with the government,
2    Your Honor.
3                MR. ONORATO:  Your Honor, that's acceptable.
4                I'm sorry.  I apologize.
5                That's also acceptable to the defense.
6                THE COURT:  Okay.  I will set this down for a
7    status conference on September 11th at 9:30.
8                Mr. Onorato, have you been able to speak to
9    Mr. Oseguera Gonzalez about exclusion of time under the
10   Speedy Trial Act?
11               MR. ONORATO:  I have, Your Honor.
12               We spoke about it.  We had talked about a 90-day
13   period of time.  And I think he's prepared to waive and toll
14   those time periods.
15               THE COURT:  I just see from my notes I have
16   already said this is a complex case.  So I think it
17   continues to be a complex case, so exclusion of time under
18   the Speedy Trial Act is appropriate given the amount of raw
19   data and the difficulties accessing that, and for defense
20   counsel to review that evidence with his client given the
21   current pandemic situations and lockdowns in detention
22   facilities, like the jail in which Mr. Oseguera Gonzalez is
23   detained.
24               I will make a finding that the complex case
25   designation continues to hold and that exclusion of time
```

1    under the Speedy Trial Act is appropriate here, and that
2    exclusion of time is in the interest of justice and that
3    those interests outweigh the interests of Mr. Oseguera
4    Gonzalez and the public in a speedier trial.
5             Is there anything further to address today from
6    the government?
7             MR. NARDOZZI:  Nothing from the government, Your
8    Honor.
9             THE COURT:  And, Mr. Onorato?
10            MR. ONORATO:  Not on our behalf, Your Honor,
11   unless Mr. Corso has anything to add.
12            MR. CORSO:  Hello, Your Honor.  This is Mr. Corso.
13            No.  I don't have anything to add on the discovery
14   topic.
15            I did want to mention just very briefly -- and I
16   neglected to tell the government this in advance.  But I
17   have possibly some concerns about the privacy of
18   attorney-client communications using the secured video
19   conferencing, and I just wanted to put a little bug in your
20   ear about it.
21            I am going to hold back on any details at this
22   time and get with the government and tell them specifically
23   my observations and my concerns, and we may bring that back
24   to you jointly at the next status conference.
25            THE COURT:  Okay.  And this is -- these are

1    supposed to be attorney-client video conference facilities
2    that are provided by the jail or by the U.S. Attorney's
3    Office?
4             MR. CORSO:  They are provided by an independent
5    company called Securus Technologies at the Central Virginia
6    jail under the guidelines of United States Marshal.
7             THE COURT:  Okay.  Well, I am not going to address
8    anything here, it's my first time hearing about it.  But if
9    you have issues, you will bring it to my attention.
10            MR. CORSO:  We sure will.  Thank you.
11            THE COURT:  Okay.  Thank you.  You are all
12   excused.
13            MR. NARDOZZI:  Thank you, Your Honor.  Take care.
14            (Whereupon, the proceeding concludes, 3:26 p.m.)

**CERTIFICATE**

17       I, ELIZABETH SAINT-LOTH, RPR, FCRR, do hereby
18   certify that the foregoing constitutes a true and accurate
19   transcript of my stenographic notes, and is a full, true,
20   and complete transcript of the proceedings to the best of my
21   ability.
22       Dated this 23rd day of May, 2023.
23       /s/ Elizabeth Saint-Loth, RPR, FCRR
         Official Court Reporter