```
                UNITED STATES DISTRICT COURT
                FOR THE DISTRICT OF COLUMBIA

 * * * * * * * * * * * * * * * *
UNITED STATES OF AMERICA,        ) Criminal Action
                                 ) No. 16-229
vs.                              )
                                 )
RUBEN OSEGUERA-GONZALEZ,         ) February 28, 2020
           Defendant.            ) 9:31 a.m.
                                 ) Washington, D.C.
 * * * * * * * * * * * * * * * *
```

**TRANSCRIPT OF PROCEEDING
BEFORE THE HONORABLE BERYL A. HOWELL,
UNITED STATES DISTRICT COURT JUDGE**

**APPEARANCES**:

```
FOR THE UNITED STATES:
                ANTHONY NARDOZZI
                BRETT REYNOLDS
                KAITLIN J. SAHNI
                U.S. Department of Justice
                145 N Street, NE
                Washington, DC 20530
                (202) 598-2493
                Email: anthony.nardozzi@usdoj.gov

FOR THE DEFENDANT: DANNY ONORATO
                Schertler Onorato Mead & Sears
                555 13th Street, NW, Suite 500 West
                Washington, DC 20004
                (202) 628-4199
                Email: donorato@schertlerlaw.com

                ARTURO CORSO
                The Washington International
                1300 Pennsylvania Avenue NW
                Washington, DC 20004
                (202) 628-4199
                Email: arturo@washingtonilc.com

ALSO PRESENT:   TERESA SALAZAR, Spanish Language Interpreter

Court Reporter: Elizabeth Saint-Loth, RPR, FCRR
                Official Court Reporter
```

Proceedings reported by machine shorthand.
Transcript produced by computer-aided transcription.

```
 1                    P R O C E E D I N G S
 2            THE COURTROOM DEPUTY:  Matter before the Court,
 3   Criminal Case No. 16-229, United States of America versus
 4   Ruben Oseguera Gonzalez.
 5            Counsel, please come forward and state your names
 6   for the record.
 7            MR. NARDOZZI:  Good morning, Your Honor.
 8   Anthony Nardozzi on behalf of the government.  I am joined
 9   at counsel table by Brett Reynolds and Kaitlin Sahni.
10            THE COURT:  Yes.  Good morning.
11            MR. ONORATO:  Good morning, Your Honor.
12   Danny Onorato and Arturo Corso on behalf of Mr. Oseguera
13   Gonzalez who is present in the courtroom.
14            THE COURT:  All right.  Good morning.
15            Just for the record, the interpreter is a court
16   interpreter for the court, so she's already been sworn in.
17            All right.  Well, why don't I start with the
18   government.  And why don't you tell me a little bit about
19   the evidence that may be required in this case.  Also tell
20   me if you have already conferred with defense counsel about
21   how you'd like to proceed in the case.
22            MR. NARDOZZI:  Yes, Your Honor.
23            This case is a two-count indictment; it's a 959
24   drug importation drug conspiracy, as well as a 924(c) count.
25            The allegations involve Mr. Oseguera Gonzalez
```

1  being involved at the high levels of a drug cartel known as
2  the Cartel de Jalisco Nueva Generación, called the CJNG.
3  It's a high-level Mexican drug cartel that's rivaled in,
4  kind of, size and scope only by the Sinaloa cartel.
5         Mr. Oseguera Gonzalez is a leader of the cartel.
6  There is a volume of evidence that involved Title III
7  intercepts, Blackberry messenger -- essentially, text
8  messages, Your Honor -- as well as cooperating witnesses,
9  all speaking in Spanish language that would testify against
10 the defendant at trial.
11         THE COURT:  How long were the wiretaps?
12         MR. NARDOZZI:  I'm sorry?
13         THE COURT:  How long were the Title III wiretaps?
14         MR. NARDOZZI:  The Title III wiretaps lasted for
15 about a year, Your Honor.  The defendant was intercepted
16 over a number of different devices that were the target
17 devices of other individuals.  There was a period of
18 interception where we targeted the defendant's devices
19 while -- so with that, Your Honor, there is also additional
20 evidence of drug activity, law enforcement witnesses --
21         MR. ONORATO:  I'm sorry to interrupt.  I don't
22 think it's working.
23         THE COURT:  Let's test it.
24         Sorry to stop you midstream.
25         MR. NARDOZZI:  It's all right.

1        THE COURT:  Okay.  Now it's working.
2            (Technical/audio malfunction.)
3        MR. ONORATO:  Thank you, Your Honor.
4        THE COURT:  All right.  Given the fact that I
5   couldn't tell exactly when the defendant's earphones stopped
6   working, let me just summarize really quickly that:  The
7   government had Title III wiretaps on the defendant's own
8   phone and the phones of others --
9        MR. NARDOZZI:  That's correct, Your Honor.
10        THE COURT:  -- that you would intend to use in
11   your case in chief were this case to go to trial.
12            In addition, there are witnesses who speak
13   Spanish, as well as law enforcement agents who have
14   accumulated documentation, shall we say, that would have to
15   be produced in discovery.
16        MR. NARDOZZI:  Yes, Your Honor.  That's a fair
17   statement.
18        THE COURT:  All right.  In terms of the volume of
19   wiretaps, they were about one year.  And how far along is
20   the government in getting those prepared for production?
21        MR. NARDOZZI:  We're working on it diligently,
22   Your Honor.  In the discovery production that will hopefully
23   pass today, we have all of the applications and orders
24   authorizing the Title III with a couple of limited
25   exceptions, where we are missing a page or two, that we can

1    find shortly.
2         In addition, we're passing over draft translations
3    of portions of the wire that were intercepted, and we've
4    tried to prioritize the portions of the wire that directly
5    involve this defendant for the defense counsel to have a
6    chance to look at that with him.
7         THE COURT:  That is all being produced today?
8         MR. NARDOZZI:  That will be produced today.
9         Your Honor, we do have to, kind of, finalize the
10   language of a protective order that I hope we can agree upon
11   shortly and present to the Court, as it relates to the
12   wiretap information and some other items that we would deem
13   to be necessary for protection.  But assuming we can get
14   that done, and I believe we can, we should be able to pass
15   that today.
16        In terms of the totality of all of the wire
17   intercepts, we are extracting the raw output reports from
18   the original Title III interception disks.  And, Your Honor,
19   I can't give you a number of how many pages that's going to
20   be because we're waiting for our first, kind of, round of
21   those to come in.  They may be lengthy, but it doesn't
22   necessarily mean they're very content heavy.  As the way
23   these intercept reports work, sometimes you might have a
24   single page with one line and then you move to the next
25   page.  I anticipate volume but not necessarily density, in

1  terms of the subject material on that volume.  But we will
2  get it produced as quickly as possible.
3              THE COURT:  Okay.  So have you conferred with
4  defense counsel about how you'd like to proceed?
5              MR. NARDOZZI:  Yes, Your Honor.
6              First of all, I conferred with defense counsel
7  about asking the Court for a complex case designation.
8  Defense counsel has agreed that a complex case designation
9  is appropriate in this matter, as a result of the volumes of
10 evidence and the need to translate from the Spanish language
11 to the English language in many instances.
12             We would ask the Court to make a complex case
13 finding today and designate this case accordingly.
14             At this stage, Your Honor, the government would
15 just ask for 30 to 60 days to come back before the Court so
16 the parties can confer, pass additional discovery, and get a
17 better idea of where the case is headed.
18             THE COURT:  Okay.  Thank you.
19             MR. NARDOZZI:  Thank you, Your Honor.
20             THE COURT:  Mr. Onorato.
21             MR. ONORATO:  Thank you, Your Honor.
22             Good morning.
23             THE COURT:  Good morning.
24             MR. ONORATO:  Your Honor, we have no objection to
25 30 days; I think that makes sense.

1                    We did have a productive conversation this morning
2       with the government, and they have a proposed protective
3       order that they'll submit to the Court.  We do agree in
4       principle what the discovery order -- I think the protective
5       order suggests how we can use the material, and I think
6       we're going to clarify by letter among the parties.  So
7       we'll agree to the language that the government has proposed
8       in that protective order.  And then we will have an
9       agreement that might modify it or tweak it a little bit that
10      we will submit to the Court if we change anything.  But at
11      this point in particular we're satisfied with it.
12                   THE COURT:  The parties can't work out a
13      protective order?
14                   MR. ONORATO:  Well -- so I was reading the
15      protective order in a much broader fashion than the
16      government said that I was reading it.  I just want to make
17      sure that I understand the rules because I want to be
18      compliant with them.
19                   THE COURT:  Well, before you submit the protective
20      order to the Court, why don't you make sure you guys cannot
21      come to an agreement before I have to start getting involved
22      in micromanaging discovery between the parties.
23                   MR. ONORATO:  Maybe I misspoke to the Court.
24                   We agree to the protective order as submitted.
25      There might be some tweaks that we will agree to by letter

1   and submit to the Court if there is something that we don't
2   understand or want clarification on.  But as the Court will
3   see, the protective order --
4              THE COURT:  I am not understanding, Mr. Onorato.
5              If I get a joint submission of a protective order,
6   and I execute it, I expect full compliance with the terms of
7   that protective order.  I also expect that it means that all
8   the parties have agreed to it.  I don't want to execute a
9   protective order and then have one side come back and say:
10  Whoops, can you change that language?
11             Don't waste my time.
12             MR. NARDOZZI:  Your Honor, if I may.  I'm sorry to
13  interrupt.
14             We spoke outside.  We'll present a protective
15  order to the Court that is the full order without any
16  additional need for an addendum or anything like that.
17             THE COURT:  Perfect.  That's what I would expect
18  from two professionals.
19             Okay.  I have also seen your motion that was
20  filed --
21             MR. ONORATO:  Last evening.
22             THE COURT:  -- last night? --
23             MR. ONORATO:  Yes, Your Honor.
24             THE COURT:  Yes.
25             -- that asked for the defendant to be able to wear

```
 1     civilian clothing --
 2               MR. ONORATO:  Correct.
 3               THE COURT:  -- at all the status conferences.
 4               Do you want to be heard any more on that?
 5               MR. ONORATO:  We submit.
 6               I don't think the government has an opposition,
 7     but we would ask the Court to consider that.  The jail that
 8     he's at actually allows it.
 9               THE COURT:  Okay.  And the government's position
10     is what?
11               MR. NARDOZZI:  Your Honor, we don't take a
12     position.  We defer to the Court and, of course, to the
13     Marshals Service that's responsible for transporting him and
14     managing this whole thing.  We have no official position.
15               THE COURT:  All right.  I have consulted with the
16     Marshals Service and the Marshals Service raises some
17     serious concerns about, both, the administrative burden and
18     the safety concerns which are, of course, interrelated
19     concerns because every time a defendant has to change
20     clothing -- and civilian clothing is brought in -- it has to
21     be checked and double-checked, if it has belts, shoelaces --
22     any of those things -- every pocket has to be checked.
23               Some of those items -- normal to civilian
24     clothing -- are dangerous both to the defendant and possibly
25     to others, so the Marshals Service has to make sure that
```

1    those aren't there.  So it is not the culture or practice in
2    this court to have defendants wear civilian clothing for
3    court appearances other than trial.
4             Your motion is denied.
5             So is there any other motion that I may have
6    missed on the docket?
7             MR. ONORATO:  No, Your Honor.
8             What we're trying to do -- I will just alert the
9    Court to this.  We're trying to work with the marshal.
10   Mr. Oseguera Gonzalez has been transferred to a jail much
11   further away than we're accustomed to.  We are trying to
12   work with the marshals to see if they can accommodate us
13   because it's lengthy travel and it's difficult with
14   schedules to spend adequate time to get him prepared,
15   particularly with the volume of evidence.  But I think
16   that's something we'll be able to work out with government
17   counsel and with the marshals.
18            THE COURT:  All right.  So why don't we now set a
19   date for the next status conference in about 30 days.  Of
20   course, I forgot my calendar.
21            Could you check your calendars for April 3, at
22   9:30?
23            MR. NARDOZZI:  That's fine with the government,
24   Your Honor.
25            THE COURT:  And, Mr. Onorato?

1                    MR. ONORATO:  Yes, Your Honor.

2                    THE COURT:  Okay.  We'll set this down for the

3       next status conference on April 3, at 9:30.

4                    And with respect to the Speedy Trial Act, given

5       the government's description of the volume and nature of the

6       evidence in this case, that it involves fairly length

7       Title III wiretaps, all in a different language, as well as

8       other evidence that's been collected overseas that might

9       also have to be translated, I do find that it is in the

10      interest of justice to exclude -- to have this case declared

11      a complex case for exclusion of time under the Speedy Trial

12      Act.

13                   I will periodically reevaluate that at each status

14      conference to ensure that the ends of justice continue to be

15      served by exclusion of time under the Speedy Trial Act and

16      that those ends of justice outweigh the interests of the

17      public and the defendant in a speedier trial in order to

18      give defense counsel sufficient time to review all of the

19      evidence in the case, discuss that evidence with the

20      defendant so that he can, in consultation with his counsel,

21      decide how best to proceed in this case, and also to give

22      the government sufficient time to prepare the case for

23      trial.

24                   Is that sufficient for the Speedy Trial Act

25      findings from the government's perspective?

1    MR. NARDOZZI:  Yes, Your Honor.
2    THE COURT:  Is there anything further today from
3    the government?
4    MR. NARDOZZI:  Nothing from the government, Your
5    Honor.
6    THE COURT:  And, Mr. Onorato?
7    MR. ONORATO:  No, Your Honor.  Thank you.
8    THE COURT:  Okay.  Thank you.
9    You are excused.
10   MR. NARDOZZI:  Thank you, Your Honor.
11   MR. ONORATO:  Thank you, Your Honor.
12   (Whereupon, the proceeding concludes, 9:44 a.m.)

### CERTIFICATE

15   I, ELIZABETH SAINT-LOTH, RPR, FCRR, do hereby
16   certify that the foregoing constitutes a true and accurate
17   transcript of my stenographic notes, and is a full, true,
18   and complete transcript of the proceedings to the best of my
19   ability.
20   This certificate shall be considered null and void
21   if the transcript is disassembled and/or photocopied in any
22   manner by any party without authorization of the signatory
23   below.
24   Dated this 5th day of June, 2023.
25   /s/ Elizabeth Saint-Loth, RPR, FCRR
     Official Court Reporter