```
 1                    UNITED STATES DISTRICT COURT
                    FOR THE DISTRICT OF COLUMBIA
 2

 3   UNITED STATES OF AMERICA,     )
                                   )
 4           Plaintiff,            )
                                   )
 5       vs.                       ) CASE NO. 1:16-cr-00229-BAH
                                   )
 6   RUBEN OSEGUERA-GONZALEZ,      )
                                   )
 7           Defendant.            )
     _____)
 8

 9               TRANSCRIPT OF PRETRIAL CONFERENCE
          BEFORE THE HONORABLE BERYL A. HOWELL, DISTRICT JUDGE
10                      August 16, 2024
                     9:48 a.m. - 10:41 a.m.
11                      Washington, DC

12   FOR THE GOVERNMENT:
          United States Department of Justice
13        Narcotic and Dangerous Drug Section
          BY:  JONATHAN HORNOK, KAITLIN SAHNI and KATE NASEEF
14        145 N Street, NE
          Washington, DC 20530
15        (202) 913-4796

16   FOR THE DEFENDANT:
          Law Offices of Anthony E. Colombo, Jr.
17        BY:  ANTHONY COLOMBO, JR.
          105 West F Street, Third Floor
18        San Diego, California 92101
          (619) 236-1704
19
          Law Office of Ronis & Ronis
20        BY:  JAN E. RONIS
          105 West F Street, Third Floor
21        San Diego, California 92101
          (619) 236-8344
22

23   _____
                         SONJA L. REEVES
24                 Registered Diplomate Reporter
                   Certified Realtime Reporter
25                 Federal Official Court Reporter
           Transcript Produced from the Stenographic Record
```

1                    (Call to Order of the Court at 9:48 a.m.)

2                    DEPUTY CLERK:  Your Honor, this is criminal case

3     16-229, *United States of America v. Ruben Oseguera-Gonzalez.*

4                    And also, for the record, interpreters Susana Martin,

5     Manuela Crisp, and Teresa Roman have been sworn.

6                    Would the parties please come forward to the lectern

7     and identify yourselves for the record.

8                    MR. HORNOK:  Jonathan Hornok on behalf of the

9     United States.  With me here at counsel table are Kate Naseef

10    and Kaitlin Sahni.

11                   MS. RONIS:  Jan Ronis for Mr. Oseguera-Gonzalez, along

12    with attorney Anthony Colombo from my office.

13                   THE COURT:  Good morning.  So we're here for the

14    pretrial conference.  These are the matters I want to discuss

15    today, just so you know my agenda.  And then I'll hear from you

16    if you have other things you would like to add to the agenda.

17                   All pretrial motions have now been resolved, so based

18    on my review of the docket, we're done with pretrial motions.

19                   So the things that I want to discuss today are various

20    logistical matters; length of the trial; two, whether we need

21    to do anything more about plea offers.  We've already done the

22    Lafler-Frye hearing.  I want to make sure we're good on that.

23                   I want to review the statement of the case.  I know

24    there was a dispute about that between the parties.  I have no

25    idea.  I am not a mind reader, from the defense.  They raised

1    an objection without any explanation whatsoever, so I need to

2    understand whether they really have an objection or whether

3    that was just a throwaway line.  I need to talk about the voir

4    dire questions and stipulations and some jury instruction

5    issues.

6          Is there anything that the government wants to add to

7    that agenda?  What do you want to add?

8          MR. HORNOK:  Firearms in the courtroom.  So just want

9    to make sure the Court is aware of what we intend to do there.

10   I think everything else falls into one of those other buckets.

11         THE COURT:  Okay.  We can talk about that during

12   logistics.

13         Anything else to add to the agenda from the defense?

14         MR. COLOMBO:  We just have one issue to raise with the

15   Court, with regard to the practical application of the ruling

16   regarding the *Jencks* and how to proceed with regard to

17   potential impeachment.  We haven't received any of the reports

18   of investigation yet, so we don't know who the particular

19   witnesses are who witnessed those statements.  So we don't know

20   how many witnesses we might have to subpoena or have available

21   in case one of the cooperating witnesses provides an

22   inconsistent statement, so we wanted to alert the Court to that

23   potential issue.

24         THE COURT:  Have you discussed it with the government?

25         MR. COLOMBO:  Yes.

1          THE COURT:  We'll get to that.  So let's start with

2    the trial length.  I think you all saw my minute order of

3    August 13, 2024, moving up jury selection from September 9th to

4    that Friday before, September 6th.

5          On September 9th, not surprisingly, a number of judges

6    have scheduled trials.  This place is going -- the courthouse

7    is going to be overrun with prospective jurors.  It gets very

8    complicated.  So I wanted to move up jury selection to Friday,

9    September 6th, starting at 9:00 a.m.  I usually do my jury

10   selections within one day.  We would start openings on Monday,

11   September 9th.  What's the government's position?

12         MR. HORNOK:  Your Honor, as you can expect, we've got

13   lots of people coming from lots of different places, and so we

14   can make all of the adjustments to make that work from a

15   scheduling standpoint.  So we'll be here and we'll make it

16   work, but we need the time to -- we need the decision now so

17   that we can make sure we have all the flight arrangements.

18         THE COURT:  I plan to make the decision today.

19         MR. HORNOK:  Thank you.

20         THE COURT:  For the defense?

21         MS. RONIS:  Good morning, once again.  As Your Honor

22   knows, you previously set the date of September 9th to begin

23   the trial, which certainly fit with everyone's calendar, which

24   is why we agreed to that date.  I spoke with counsel this

25   morning on a personal level.  My wife is a lawyer and she's my

1    law partner, and four years ago she was in a catastrophic

2    accident for which she was out of work for about two-and-a-half

3    years.  And although she is back to work, she does need some

4    assistance.  I have made arrangements to have a daughter of

5    mine, who coincidently works in the city for the government, is

6    going to fly to San Diego the weekend preceding the trial to

7    kind of assist her in my absence.  And so in addition, that

8    daughter can work virtually from San Diego until such time as

9    she is required to return to Washington, DC.

10          So on a personal level, it does inconvenience me and

11   it would be helpful if we could adhere to the original date.

12          THE COURT:  No.  We're going to do -- we're going to

13   do jury selection on Friday, September 6th, starting at

14   9:00 a.m.  You have plenty of time to make alternative

15   arrangements, and that's what we're going to do.  So we're

16   going to have a new group of summoned jurors who are starting

17   their two-week summons duty as of September 6th, and we're

18   going to get that group and we're going to start jury selection

19   September 6th, Friday morning, at 9:00 a.m.

20          Usually when I finish jury selection mid afternoon, I

21   go right to opening statements.  But for this, we'll start

22   opening statements after we select the jury on Friday,

23   September 6th, and I give the preliminary instructions to the

24   jury, we'll start opening statements on Monday, September 9th.

25          All right.  Then in terms of other logistical matters,

1    I really want this trial done -- I saw in the voir dire that

2    lawyers were expecting this to be three to four weeks.  I have

3    only scheduled this for, at maximum, three weeks, which means

4    this trial has to get to the jury after two-and-a-half weeks.

5    So everybody just really plan accordingly.  We're going to

6    start jury selection on September 6th.  We're going to have

7    openings on Monday, September 9th.  We're going to sit Monday

8    through Friday, so be prepared for that.

9         On Fridays, I have a number of other criminal matters,

10   so we'll probably start perhaps a little delayed on, not the

11   first Friday, I don't think, I don't know, but you will find

12   out then.  But Friday mornings, I'm probably going to be tied

13   up with other matters, but we'll resume jury trial, evidentiary

14   part of the jury trial, probably by Friday at 11:00 a.m. or

15   noon or something like that.

16        So just be prepared to have all your witnesses

17   available on Fridays as well, so we can get the evidence in and

18   this case to the jury in about two-and-a-half weeks, is what I

19   anticipate.

20        Okay.  Let me hear from the government.

21        About how many witnesses does the government expect to

22   call?  I mean, clearly we know about the three noticed experts.

23   We've got the Rule 15 deposition, which I'll talk about in a

24   second.  But how many -- other than those four, how many

25   witnesses is the government expecting?

1          MR. HORNOK:  Thirteen or fourteen.  Potentially, that

2    could shift, depending on how the evidence comes in.

3    Depending, obviously, on the availability from a health

4    standpoint of some of those witnesses.

5          Something for the Court to be aware of is, at least

6    ten of those witnesses will need to testify in Spanish with

7    consecutive translation, which is part of why this case will go

8    slower than, say, a typical case where everyone is speaking in

9    English.

10          THE COURT:  Why does it have to be consecutive as

11    opposed to simultaneous?

12          MR. HORNOK:  So the issue -- the basis of our

13    preference there is that if it's in consecutive translation,

14    then both the English and the Spanish can be recorded and

15    captured correctly, so that if there's some kind of translation

16    issue, which we have run into in this courtroom, we are able to

17    go back to the recording, listen to precisely what was said in

18    English, precisely what was said in Spanish, figure out if

19    there is some kind of correction that needs to be made.

20          I am also informed that it's a requirement of the

21    statute.

22          THE COURT:  That's right.  I remember having had this

23    discussion before, since consecutive translation is like

24    watching water boil.

25          MR. HORNOK:  So that's a better reason than the one I

1    started with.  But that adds to the delay or the length of what

2    we're talking about here.

3            THE COURT:  Did this come up in *Vasquez*?

4            MS. NASEEF:  Yes, Your Honor.  We actually started

5    simultaneous translation on the first day and switched to the

6    consecutive translation as required by statute.

7            THE COURT:  I remember the interpreters were helpful

8    on that issue.  That just means, even more, we start this trial

9    on September 6th and we're going to be meeting Mondays through

10   Fridays.

11           And in terms of schedule, I have very long trial days.

12   I start at 9:00, and I expect lawyers to be here, you know,

13   15 minutes earlier and bring up any preliminary matters so that

14   I can get the jury in the box at 9:00 a.m.  And so -- and then

15   I go until 5:00 or 5:30.  I take a very short, ten-minute

16   break, usually stretches to 15, but I shoot for ten-minute

17   break in the morning, one hour for lunch, short break in the

18   afternoon, and then we just keep going.

19           So be prepared.  I would suggest that all of you sign

20   up, if you haven't already, for the online ordering system from

21   our cafeteria.  So you can pretty much set your clock that

22   we'll be -- break for lunch around 12:30 p.m.  They will have

23   your lunch waiting for you so you do not have to stand in line

24   with all the jurors and everybody else to wait for lunch.  It

25   will be waiting for you to pick up with your name on it so you

1    can have something to eat actually at lunch rather than waiting

2    in line to get your lunch.

3          Okay.  I think from the prior scheduling order, all

4    the Jencks Act material will be disclosed by August 26th.

5          Is that also the date the government is turning over

6    its witness list?

7          MR. HORNOK:  Yes, Your Honor.  That's kind of our big

8    disclosure day.

9          THE COURT:  Okay.

10         MR. COLOMBO:  Given that we're advancing through days,

11   we request that order be modified to three days earlier.

12         THE COURT:  Any objection?

13         MR. HORNOK:  Your Honor, so there are, I believe, six

14   business days between now and when that's due.  If we cut one

15   of those out, we're losing a sixth of our time to prepare.

16   Obviously, if we had known a month ago that that's when we were

17   looking for, that would -- we could have planned accordingly

18   for that.  At this point, we're losing a sixth of our time to

19   prepare for that, and there's a lot of *Jencks* material with

20   respect to some of our witnesses that needs to be gone through.

21         THE COURT:  You're at the Department of Justice.  You

22   have many, many paralegals and many, many hands.

23         MR. HORNOK:  Only three attorneys who actually know

24   the case.

25         THE COURT:  Well, you have a weekend coming up.  What

1   else to tell you.

2          All right.  So of course I forgot my calendar.  What

3   day is August 23rd?

4          DEPUTY CLERK:  That's a Friday, Your Honor.

5          THE COURT:  Next Friday.  So next Friday.  You can

6   turn it over then.

7          All right.  I'm curious about the witness who had the

8   Rule 15 deposition.  Are we going to see that -- is that

9   witness still available?  I mean, what are we -- I mean, is he

10  unavailable?

11         Let me ask it this way.  Is he unavailable?

12         MR. HORNOK:  He's still among the living, but he is in

13  the hospital, is the last update we heard.  I think that was

14  maybe a couple days ago.  I think it is an evolving situation.

15  I think it could -- he could become unavailable tomorrow.  He

16  could become unavailable the morning the marshals are prepared

17  to bring him here.  And I just -- I don't think we know.

18         THE COURT:  Okay.

19         MR. HORNOK:  So we have the video.

20         THE COURT:  I was wondering whether there was a

21  definitive answer on that.

22         MR. HORNOK:  There is no definitive answer.  At some

23  point, there is a definitive answer for all of us.  We have

24  asked and kind of broached that issue with defense counsel.

25  We're prepared to play that video.  If defense counsel got to a

1    place where they -- you know, whatever, we decided to stipulate

2    and we want to just kind of push forward in that way, we're

3    kind of prepared to make that and pivot to that way.

4         THE COURT:  What do you mean in terms of stipulation?

5    Stipulation of what he would testify to in writing as opposed

6    to playing the deposition?

7         MR. HORNOK:  Playing the deposition.  He's got a

8    confrontation right to have the witness here in court and to

9    have that witness appear in front of the jury, period.  So it's

10   up to them to decide at the -- you know, obviously, subject to

11   unavailability and what that means.  But that's essentially

12   where we are.  And so as long as he's available, then that's

13   what we intend to do, unless somebody tells us that we should

14   play the video otherwise.

15        On the issue of stipulation, just for the Court's

16   awareness, we have been working with defense counsel.  They

17   have been amenable to the stipulations, and those stipulations

18   have actually -- because of those stipulations --

19        THE COURT:  I just want to be clear, because I have

20   one document labeled "Stipulations" that has a number of

21   stipulated facts or items in it.  So when you're using the

22   plural, stipulations, are you referring to more than that one

23   document or the various facts stipulated to in that single

24   document?

25        MR. HORNOK:  The various facts.  I think there are

1    seven paragraphs in that one document.  But because we've been

2    able to resolve or reach an agreement with respect to those

3    issues, we've been able to cut at least two government

4    witnesses on the basis of that.  So --

5         THE COURT:  Well, we can skip to the stipulations,

6    because I had a number of other, like, questions about that

7    stipulation.  So we may as well just jump around a little bit,

8    since you brought it up.

9         So one of the things -- okay.  So what I like to do

10   with stipulations is I like to mark them as -- mark

11   stipulations as a piece of evidence.  It can be a joint exhibit

12   by the parties so that it can be sent back with the jury so

13   they're not all -- the jurors aren't all trying furiously to

14   take notes from the reading of the stipulation.  So I like to

15   just tell them to listen, it will be sent back to them for jury

16   deliberations.

17        When I look at your stipulation, I see it mentions

18   superseding indictment in paragraphs 3 and a few times in

19   paragraph 8.  I really don't see any reason to mention the word

20   "indictment" at any time during this trial, because then I have

21   to explain an indictment is a formal charging document.  People

22   in DC, they're pretty sophisticated jurors.  They're going to

23   know, oh, that means a grand jury has already looked at these

24   charges and decided, yeah, we should indict.  I like to keep

25   the word "indictment" out of the trial.

1          So knowing two things.  No one has to mention the word

2    "indictment" during the course of this trial.  So we can talk

3    about the charges, but no reason to talk about the indictment.

4    The indictment will not be sent back during jury deliberations.

5    They will have the charges fully reflected in the written jury

6    instructions, so they have no need to see the indictment with

7    the big label starting "the grand jury has decided."  Okay?  No

8    need for that, which means -- but I do want to send the

9    stipulation back.

10          So do you guys want to rewrite your stipulation so

11    you're not referencing the superseding indictment three

12    different spots in their stips?

13          MR. HORNOK:  I think it's important that the defendant

14    sign and kind of affirm his signature on the stipulation here

15    in open court today.  So in other words, I think rewriting it

16    and getting it resigned is going to be difficult to make that

17    happen today in court.  What I propose, perhaps in exchange, is

18    that we put together a joint exhibit --

19          THE COURT:  I have never had that done before, that a

20    defendant -- I have to have a defendant sign a stipulation in

21    court.  You guys can do that on your own time.  Why do you need

22    to do that today?  I mean, you can talk to the defense

23    counsel and get them to -- I mean, either they're going to sign

24    it or they're not.  So -- but I'm just telling you, you're

25    mentioning superseding indictment throughout this stipulation.

1  It will be sent back to the jury.  It will be up to you to

2  decide how you want to deal with that.  I would suggest you

3  remove the word "superseding indictment" from your stipulation.

4          MR. HORNOK:  Happy to do that, Your Honor.  In order

5  for us to rely -- part of why we want to address the

6  stipulations in court is because we're going to rely on them.

7  That means we're not going to prepare to call those witnesses.

8  And so that's part of why we want to make sure that today we're

9  able to kind of move forward with the expectation that we can

10  rely on that stipulation, which I fully believe that that's the

11  case.  We want to make the record so that at some point later

12  if --

13          THE COURT:  Well, I don't know -- have you asked

14  defense counsel?  Has the defendant signed the stipulation yet?

15  I don't see defense counsel's signature on this.

16          MR. COLOMBO:  We have met and conferred with the

17  government regarding the stipulation.  We were prepared to

18  agree to it.  We've had it translated into Spanish to our

19  client.  He's prepared to sign it, given --

20          THE COURT:  Why hasn't he signed it already?

21          MR. COLOMBO:  Well, we were --

22          THE COURT:  This was produced to me on July 31, 2024.

23  What have you all been doing?

24          MR. COLOMBO:  We were going to have him sign it this

25  morning, Your Honor.  But given that Your Honor's preference is

1    to have it go back to the jury and not just be read into
2    evidence, we would agree that striking "superseding indictment"
3    out of it would be appropriate, and we're happy to have him
4    sign a modified version of that.
5           THE COURT:  Okay.  I also see that paragraph eight has
6    a stipulation, indicates that the parties agree that the Court,
7    not the jury, will make all the legal and factual
8    determinations regarding the forfeiture allegations in the
9    superseding indictment.  And so that, I do want to make a
10   record on because under Rule 32.2, I have to decide at the
11   outset whether -- and certainly before the jury begins
12   deliberating, whether either party requests that the jury be
13   retained to determine the forfeitability of specific property
14   if it returns a guilty verdict.
15          I'm not sure that that provision actually applies to a
16   sum of money, but -- because I don't see any specific property
17   identified in the superseding indictment.  So is it the
18   government's position or the parties' position that even when
19   it comes to a sum of money derived from a drug trafficking
20   offense that the jury is entitled under 32.2 to decide that as
21   well?
22          MR. HORNOK:  I believe it does.  A, if the defendant
23   wants to have a jury make that forfeiture determination, or the
24   government wanted the jury to make that forfeiture
25   determination with respect to a sum of money, that we would

1    have the right to do so.  In any event, if we're wrong, I think

2    having that stipulation ahead of time and pretending as if they

3    did, even if we were wrong, that protects everybody from a

4    messy appeal because we didn't nail it down ahead of time.

5        THE COURT:  Because I'm expecting that a government

6    witness is going to testify, as to over the course of this

7    conspiracy, how cocaine was allegedly imported into the country

8    and how much it was going to be worth.  And so, I mean, there's

9    going to be evidence.  Be fairly easy, if the jury gets to that

10   point, to decide it.

11       So I know that the rule says that the Court has to

12   determine this before the jury begins deliberating, so I

13   appreciate wanting to know this beforehand in terms of the

14   detail with which you have to delve into it before the jury.

15   But for the record, this is the pretrial conference.  I want to

16   know, is the defense going to ask that the jury be retained to

17   determine the amount, the money judgment amount for forfeiture?

18       MR. COLOMBO:  Your Honor, there's no specific assets

19   or balance alleged in the superseding indictment.  So no, we

20   didn't intend to request that the jury is amenable to this.

21       THE COURT:  Well, what's your position, I mean in

22   terms of that?  Because the rule is pretty clear about specific

23   property, as opposed to a money judgment sum.  So I viewed it

24   as specific property as opposed to a specific sum, but I

25   haven't actually done case law research on this.  What's the

 1  defense position on that?  Does Rule 32.2 allow for one party

 2  or the other to opt for a jury verdict on a money judgment sum?

 3          MR. COLOMBO:  Your Honor, I haven't delved into the

 4  specific research, so I wouldn't be prepared to answer

 5  Your Honor this morning.  But this was -- given that the

 6  superseding indictment doesn't specifically outline any

 7  property, we were not particularly concerned about it.

 8          THE COURT:  Okay.  Well, perhaps I need supplemental

 9  briefing from the parties on this issue, unless the defense --

10  I know you've got this in the stipulation, but that, I do want

11  a record on.  So if the defense is not prepared to stipulate

12  now, you know, or to assure the Court now that you're not

13  asking for -- to invoke your right under Rule 32.2 to have the

14  jury consider the forfeitability of a money judgment amount,

15  then I will want supplemental briefing on that.  And perhaps

16  you can -- do you want to propose a schedule for supplemental

17  briefing on that?

18          MR. COLOMBO:  I think we're prepared to stipulate,

19  Your Honor, with regard to that.  And maybe the parties can

20  meet and confer with more specific language.

21          THE COURT:  No.  You can tell me right now.  I mean,

22  because the government isn't planning to do this, I take it.

23  So really, I just -- do I understand that correctly?

24          MR. HORNOK:  If they're willing to stipulate, we're

25  willing to stipulate.

1          MR. COLOMBO:  We are, Your Honor.

2          THE COURT:  So for the record, are you willing to

3   waive any right you have to have a jury consideration of

4   forfeiture under Rule 32.2, whether it's specific property or

5   of money judgment?

6          MR. COLOMBO:  We are.

7          THE COURT:  Okay.  Good.  I have that for the record.

8   So putting aside how you want to articulate that in your

9   written stipulations signed to be sent back to the -- fully

10  executed and sent back to the jury as an exhibit for my

11  purposes under Rule 32.2, we're done on that.

12         Okay.  All right.  Are the parties still negotiating

13  additional stipulations other than what you've already decided

14  on that's in this document at page 101 of the joint pretrial

15  statement and the other stipulation you're working on with

16  respect to the Rule 15 deposition witness?  Any other

17  stipulations?

18         MR. HORNOK:  No, Your Honor.  Nothing else is being

19  discussed at this point.

20         THE COURT:  All right.  So I will be issuing a final

21  trial order, probably today after this pretrial conference.

22  And just so you know, that details how I do my jury selection

23  method.  It's a version of the struck method.  And it will also

24  provide the list of the voir dire questions I intend to ask

25  based on what the parties have proposed and further discussion

1    we're going to have about that.

2            The last thing I want to talk about in terms of

3    logistics is how long each side will need for opening

4    statements.  How long does the government anticipate needing?

5            MR. HORNOK:  20 minutes or less.

6            THE COURT:  20 minutes or less.  Okay.  I'll give you

7    30 minutes.

8            For the defense?

9            MR. COLOMBO:  The same, Your Honor.

10           THE COURT:  So the trial order will put in 30 minutes

11   for openings on each side.  That will give you a little bit of

12   flexibility.

13           In terms of alternates, I'm planning on picking two

14   alternates unless people think, for whatever reason, they need

15   more.

16           MR. COLOMBO:  That's acceptable.

17           MR. HORNOK:  Two is fine, Your Honor.

18           THE COURT:  Certainly, they all fit in my box without

19   some sitting outside the box.  So it's usually more convenient.

20           Any other logistical matters that people want to talk

21   about?  We've talked about timing, jury selection, alternates.

22   Just so you know, I will not tell the jurors who the alternates

23   are, but I'll keep the alternates as the last two seats, seats

24   13 and 14 in the back row.

25           MR. HORNOK:  Just with respect to the firearms, I want

1  to talk about that.

2          THE COURT:  Yes.

3          MR. HORNOK:  We are preparing to bring exemplar

4  firearms in with the expert witness to demonstrate to the jury

5  what do these things look like, how do they work, as an aid.

6  We're working with the marshal service to make sure that we

7  follow the correct protocols to do that.  We've talked to

8  defense counsel about that.  We just -- I just wanted to put

9  that on your radar, let you know we're working with on it, so

10 that if somebody walks in here with an RPG in the middle of

11 court you -- that's not the first time you hear about it.

12         THE COURT:  Okay.  Communications of plea offers.  Do

13 we need to actually have the actual -- I mean, how big is an

14 RPG?  We can't just use a photograph?

15         MR. HORNOK:  Your Honor, we think that it's necessary

16 given the fact that what we have are just photographs.  And so

17 it is for the witness to be able to explain -- photographs are

18 somewhat small.  We've got small screens.  The actual exemplar

19 is able to actually provide the jury the detail that's

20 necessary for the expert to explain, this is how this works,

21 these are the defining characteristics of this weapon that make

22 it, in fact, a destructive device or firearm.  And then also,

23 just it's --

24         THE COURT:  How big is it?

25         MR. HORNOK:  I believe it can be quite large.  I mean,

1   there are very large weapons at issue in this case.  This isn't

2   a case about a handgun and some .22 caliber ammunition.  It's

3   large.

4           THE COURT:  All right.  Okay.  Communication of plea

5   offers to the defendant.  We've already done that on

6   May 13, 2024, where the defendant had fully detailed for him

7   what the plea offers were in this case and he rejected them,

8   made it clear that he had rejected them on the record.

9           I don't see any reason to have to repeat that now.

10  Does anybody else see any reason to do that?  Because that's

11  what I typically do at a pretrial conference, but we've already

12  done it.

13          MR. HORNOK:  Your Honor, I think we've already done

14  it.  Just to put briefly on the record, defense counsel raised

15  the issue again about the potential of plea negotiations.  We

16  rejected their proposal.  There haven't been any further plea

17  offers from the government and aren't any ongoing negotiations.

18          THE COURT:  Does defense counsel want to say anything?

19          MR. COLOMBO:  No, Your Honor.

20          THE COURT:  Okay.  Statement of the case.  Okay.  The

21  government proposed a statement of the case.  The government

22  said it had objections.  What's your objections?

23          MR. COLOMBO:  Your Honor, to the highlighted area, the

24  italicized area, which essentially lays out the government's

25  theory of prosecution, which isn't something that's

1    specifically alleged in the superseding indictment, and we just

2    thought the statement of the case should not include the

3    government's --

4            THE COURT:  Mr. Colombo, right?  Mr. Colombo, your

5    voir dire questions say, "You know anything about this CJMG?

6    You know anything" -- I mean, you know the voir dire questions

7    have to ask, "Does anybody -- has anybody heard anything about

8    this case, this defendant, you know anything about this case."

9            How are they going to know anything about this case if

10   you just read what you're proposing, which is, this is what the

11   charge is, I mean, with no mention of drug trafficking

12   organization based in Mexico, no mention of the CJMG?  I mean,

13   really.

14           MR. COLOMBO:  Your Honor, the concern is that this is

15   coming from the Court, stating on behalf of the government

16   their statement of the case.

17           THE COURT:  Overruled.  I'm really -- your objection

18   is overruled.  This is the statement of the case I'm going to

19   use, in order to make the statement of the case at all useful

20   to elicit from the venire panel anybody who might know

21   something about this case, have a bias about this case, rather

22   than just reading the charges in the indictment, which is

23   apparently what the defense is proposing.

24           Okay.  This is what the statement of the case will be:

25           This is a criminal case.  The United States charges

1    Defendant Ruben Oseguera-Gonzalez with participating in the

2    conspiracy from around 2007 to February 1, 2017, to distribute

3    5 kilograms or more of cocaine and 500 grams or more of

4    methamphetamine for importation into the United States, and

5    that in furtherance of this conspiracy, he used, carried,

6    brandished, and possessed firearms, including destructive

7    devices.

8         In this case, the government alleges that

9    Mr. Oseguera-Gonzalez was a member of a drug trafficking

10   organization based in Mexico known as the New Generation

11   Jalisco Cartel, which is also known by the Spanish acronym

12   CJMG, that manufactured and distributed controlled substances

13   destined for the United States.

14        The government further alleges that the defendant and

15   other members of the CJMG possessed, used, carried and

16   brandished firearms in connection with their drug trafficking

17   activities, including grenade launchers and rocket-propelled

18   grenades.

19        Mr. Oseguera-Gonzalez denies the government's

20   allegations and maintains his innocence.

21        All right.  Any changes, modifications, objections to

22   that statement from the government?

23        MR. HORNOK:  No, Your Honor.

24        THE COURT:  And from the defense, other than the fact

25   that it explains what the allegations are to elicit bias or

1    previous knowledge by the venire panel?

2            MR. COLOMBO:  We have nothing to add to our objection.

3            THE COURT:  All right.  The defense objection is

4    overruled.

5            All right.  For the voir dire questions, the parties

6    have pretty much agreed, I think, on most of the voir dire

7    questions.  I ask the voir dire questions collectively, so they

8    have to be framed in a way the response can be yes or no.  I

9    think most of the questions I cover, at least in subject

10    matter.

11            I think one of the questions that the parties proposed

12    in question 21 was if one of the jurors -- a juror or close

13    friend or family member belonged to any group or organization

14    that advocates for law enforcement reform, which is very, very

15    broad, and it's already covered in a bunch of other questions.

16    And law enforcement reform, I don't know, I just thought we're

17    already -- it's already asking about drug law reform and

18    various other forms of reform.  I just think adding that in is

19    a little bit gilding the lily and so broad.

20            I'm not sure I could encompass if you're a member of

21    the two major political parties.  I just think it's so broad,

22    to be useless.  Given the fact that we're asking so many other

23    questions about, you know, groups active in law enforcement,

24    crime victim prevention matters, you know, various other

25    things, I just don't think we need that question.

1          Anybody want to push for it?

2          MR. HORNOK:  Your Honor, I think it's the flip side of

3     the previous question.  I mean, Crime Stoppers, I think, is

4     more are you a citizen who is really involved in supporting

5     police, and I think kind of the flip-side question is, are you

6     a citizen -- or at least the attempt was, are you a citizen who

7     is really involved in defund the police or -- but perhaps law

8     enforcement reform is the wrong way to phrase that.  But

9     that's --

10         THE COURT:  You're asking questions about

11    participation in law -- active in law enforcement or crime

12    victim prevention matters.  I'm going to ask a question about

13    past five years, belonged or participated in groups or

14    organization that advocate for changes in drug control laws,

15    participated in groups that advocate for gun rights or changes

16    to gun laws.  I mean, that's a lot of -- I mean, asking about

17    group or organization that advocates for law enforcement reform

18    just seems a little bit duplicative of all of those other ones.

19         What's the defense position?  I'm not going to ask it.

20    All of these other questions will get to the same -- basically

21    to the same point.

22         Okay.  So then the government has proposed three

23    questions to which the defense objects.  And question 26 and 27

24    asked jurors if they can follow legal instructions about not

25    drawing any inferences from the fact that only the defendant is

1    before the jury on conspiracy and aiding and abetting charges.

2    The defense objected to those on 26 and 27.  What's your

3    objection to that?

4        MR. COLOMBO:  Your Honor, we would consider it

5    indoctrinating of the jury through the government's theory of

6    the case or addressing witnesses in the government's case.  We

7    just didn't think those were necessarily appropriate.  I would

8    submit on those comments, Your Honor.

9        THE COURT:  Does the government want to respond?

10       MR. HORNOK:  Your Honor, this is a conspiracy case.

11   Conspiracy law is something that doesn't necessarily -- isn't

12   necessarily obvious or common to a piece of common

13   understanding for jurors, and these are important aspects of

14   liability.  They are accurate statements of the law.  And so

15   the question here is:  Juror, are you going to be one who could

16   say -- because the conspiracy laws say it's a crime to make an

17   agreement to commit a crime -- juror, are you going to be able

18   to follow the law with respect to that, as opposed to saying,

19   well, I just really don't want to find somebody guilty of a

20   crime unless that person specifically held the drugs or

21   specifically held the gun.

22       And that's just not the way the law works.  And so

23   these are accurate statements of the law and they get to

24   whether the jurors are able to follow the law.  And they are

25   important aspects to the way the government intends to prove

```
 1   its case.  I mean, particularly with respect to Count 2, we're
 2   talking about firearms.  There's a lot of firearms in this
 3   case, but there's a lot of firearms that were held, possessed,
 4   carried, used, brandished by people other than the defendant.
 5   And so the ability of the jurors to follow the law with respect
 6   to his liability through Pinkerton for those actions of
 7   co-conspirators is an important thing that the -- we need to
 8   identify if we've got jurors who can't follow the law on that,
 9   because if they can't, then that's going to cause significant
10   issues with us being able to get a fair trial from such a
11   juror.
12           THE COURT:  This is the question that I would propose
13   asking:  The defendant is charged with conspiring with others
14   and aiding and abetting others to commit illegal acts, but
15   those other alleged persons are not on trial here, and you may
16   not speculate as to the reasons why those individuals are not
17   on trial.  Would you have any difficulty following that
18   instruction?
19           Any defense objection to that?
20           MR. COLOMBO:  No, Your Honor.
21           MR. HORNOK:  With respect to 26, I think that's --
22   that's a perfectly fine instruction, but I don't think it
23   captures --
24           THE COURT:  This is not an instruction.  This is
25   asking them, would they be able to follow that instruction if
```

1    given.  So anyway, that's the question I'm prepared to ask.

2         Okay.  So then the defense also had an objection to

3    the proposed question 34 by the government, which asks if

4    jurors have beliefs regarding judge-approved interception of

5    electronic communications that would impede them from following

6    the Court's instructions or considering this evidence.

7         Could you explain your objection to that?

8         MR. COLOMBO:  Your Honor, the government is

9    highlighting particular instructions that the Court may give

10   throughout the course of the case or at the end of the case,

11   and I don't think it's necessary to ask that particular

12   question.

13        THE COURT:  Actually, this is one where it's -- some

14   people just don't like wiretaps.  And if they just don't like

15   wiretaps and are not going to consider that evidence, that's a

16   fair bias to elicit during voir dire.  So why isn't that a fair

17   thing to elicit?

18        MR. COLOMBO:  I think a more general question of

19   whether the jurors can follow the law as Your Honor instructs

20   is more appropriate than specifically highlighting portions of

21   the government's case and theory of their case and the

22   prosecution.  So for those reasons, Your Honor, we think a more

23   general question is appropriate, rather than a specific one

24   that's been requested by the government.

25        THE COURT:  Does the government want to be heard?

1          MR. HORNOK:  Your Honor, there are jurors who just

2    simply disagree with the law with respect to wiretaps, with

3    respect to conspiracy liability.  Asking the question, "Will

4    you follow the law as I give it to you," doesn't give them the

5    necessary information to peak in their head of, oh, well,

6    you're right with respect to this area of the law, I do

7    disagree with what the law is and it would be difficult for me

8    to follow it.

9          So it's -- "will you follow the law" is almost a

10   meaningless question without something more specific like what

11   we have here.

12         THE COURT:  Okay.  This is the question that I plan to

13   ask.  It's not precisely what the government had proposed:

14         During this trial, you may hear testimony and review

15   evidence of electronic communications intercepted by the

16   government through use of judge-approved warrants.  Do you have

17   any beliefs or concerns related to judge-approved interception

18   of electronic communications that would make it difficult for

19   you to evaluate that evidence fairly?

20         MR. HORNOK:  Sounds perfect.

21         THE COURT:  From the defense?

22         MR. COLOMBO:  No further objection.

23         THE COURT:  All right.  To the extent you have an

24   objection to that and I understand it correctly, it's

25   overruled.

1          Okay.  We've already talked about stipulations.  Let's

2    see.  I think the last thing I wanted to talk about was jury

3    instructions.  And the parties, of course, proposed that I

4    include the standard instruction that the indictment is not

5    evidence.  I don't include that because I'm not going to have

6    the -- you know, I just cautioned counsel, don't talk about the

7    indictment in the case.  So I don't need to provide that

8    instruction.

9          And as I understand it, the parties have agreed pretty

10   much on all of the instructions, except the defendant objects

11   to proposed 48 and proposed instruction 49.

12         Did I understand that correctly?

13         MR. COLOMBO:  Correct, Your Honor.

14         THE COURT:  Okay.  So the two instructions that are

15   objected to is the proposed instruction on conspirator

16   liability, and the government objects to the defense

17   instruction on multiple conspiracies.

18         So for the conspirator liability, the defense says

19   that that is an inaccurate statement of the law.  So do you

20   want to explain that?  I'm not going to rule now.  I'm going to

21   wait for the charging conference.  But I just want to hear you

22   so I can decide whether or not you need to file a supplemental

23   briefing.

24         MR. COLOMBO:  Your Honor, in reviewing the case law, I

25   think it would be inappropriate to apply *Pinkerton* liability to

1    Count 2, and so that's the basis for the objection.  We think

2    it goes too far and it essentially would, I think, direct a

3    verdict if the defendant is found guilty of Count 1 with regard

4    to Count 2.  And so we do not think that *Pinkerton* liability

5    should be applicable to the 924 offense, and so that's the

6    basis of the objection.

7         THE COURT:  Okay.  So I'm going to ask you to submit

8    any supplemental briefing on that point by August 23rd, with

9    any response by the government by August 30th, so I can be

10   prepared before trial to know where we're going in case there

11   are objections during the course of the trial to certain

12   evidence based on what the instructions are.

13        With respect to instruction 49, on multiple

14   conspiracies, which is the defense proposal, lifted from a

15   Ninth Circuit instruction, the government objects that it's an

16   inaccurate statement of the law in this district and is

17   confusing and misleading for a jury.  And, I mean, I've looked

18   at the Ninth Circuit instruction.  I thought it was a little

19   broad myself.

20        But with that briefing, if the defense can give me

21   details about your objections to the government's proposed

22   instruction by August 23, and the government can give me your

23   objections to the supplemental memo explaining your objection

24   to the defendant's multiple conspiracy instruction by

25   August 23, that would be good, and then the responses by each

1    side on August 30th, so that I could be prepared at trial to

2    resolve that, since we're going to be moving along at a pretty

3    fast clip at this trial.

4           Okay.  So with that, I have completed everything on my

5    agenda.  I think we've talked about everything -- the two

6    things that the government wanted to add to the agenda.  So is

7    there anything else that anybody wants to talk about now?

8           MR. HORNOK:  Nothing more from the government, Your

9    Honor.

10          MR. COLOMBO:  No, Your Honor.

11          THE COURT:  All right.  Then you're all excused and I

12   can move on to my next matters.

13      (Proceedings concluded at 10:41 a.m.)

14

15                          CERTIFICATE

16      I, Sonja L. Reeves, Federal Official Court Reporter in and
     for the United States District Court of the District of
17   Columbia, do hereby certify that the foregoing transcript is a
     true and accurate transcript from the original stenographic
18   record in the above-entitled matter and that the transcript
     page format is in conformance with the regulations of the
19   Judicial Conference of the United States.

20      Dated this 26th day of August, 2024.

21

22                          /s/ Sonja L. Reeves
                            SONJA L. REEVES, RDR-CRR
23                          FEDERAL OFFICIAL COURT REPORTER

24

25