# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| v. | Criminal Action No. 16-229 (BAH) |
| RUBEN OSEGUERA-GONZALEZ, | Judge Beryl A. Howell |
| Defendant. | |

## INSTRUCTIONS TO THE JURY

The attached instructions were read to the jury in the trial of the captioned case on September 19, 2024, and given to the jury for deliberations on September 19, 2024.

Date: September 19, 2024

_____
BERYL A. HOWELL
U.S. District Court Judge

JURY INSTRUCTIONS – *U.S. v. Oseguera-Gonzalez*, 16cr229

Ladies and gentlemen, at this time, it is my duty and responsibility as the trial judge to give you instructions as to the law that applies to this case and to the evidence that has been presented. It is your sworn duty to base your verdict upon the law given in these instructions and upon the evidence that has been admitted in this trial.

I am going to provide each of you with a copy of these instructions, so you don't have any need to take notes; I see some of you picking up pens to take notes of the instructions, and I appreciate your conscientiousness—but you just need to listen. During your deliberations, you may, if you want, refer to these instructions. While you may refer to any particular portion of the instructions, you are to consider the instructions as a whole and you may not follow some and ignore others. If you have any questions about the instructions, you should feel free to send me a note. I will give you instructions about how to do that at the end of these instructions. The copy of these instructions given to you will be returned to me when you render your verdict.

My function is to conduct this trial in an orderly, fair, and efficient manner; to rule on questions of law; and to instruct you on the law that applies in this case. It is your duty to accept the law as I instruct you. You should consider all the instructions as a whole. You may not ignore or refuse to follow any of them.

Your function, as the jury, is to determine what the facts are in this case. You are the sole judges of the facts. While it is my responsibility to decide what is admitted as evidence during the trial, you alone decide what weight, if any, to give to that evidence. You alone decide the credibility or believability of the witnesses.

As human beings, we all have personal likes and dislikes, opinions, prejudices, and biases. Generally, we are aware of these things, but you also should consider the possibility that you have implicit biases, that is, biases of which you may not be consciously aware. Personal prejudices, preferences, or biases have no place in a courtroom, where our goal is to arrive at a just and impartial verdict. All people deserve fair treatment in our system of justice regardless of any personal characteristic, such as race, national or ethnic origin, religion, age, disability, sex, gender identity or expression, sexual orientation, education, or income level. You should determine the facts solely from a fair consideration of the evidence. You should decide the case without prejudice, fear, sympathy, favoritism or consideration of public opinion.

You may not take anything I may have said or done as indicating how I think you should decide this case. If you believe that I have expressed or indicated any such opinion, you should ignore it. The verdict in this case is your sole and exclusive responsibility.

If any reference by me or the attorneys to the evidence is different from your own memory of the evidence, it is your memory that should control during your deliberations.

During your deliberations, you may consider only the evidence properly admitted in this trial. The evidence in this case consists of the sworn testimony of the witnesses, the exhibits that were admitted into evidence, the facts and testimony stipulated to by the parties, and the videotaped deposition of a witness.

During the trial, you were told that the parties had stipulated—that is, agreed—to certain facts. You should consider any stipulation of fact to be undisputed evidence.

During the trial, the videotaped deposition of Mario Ramirez Trevino was presented to you. A deposition is the sworn testimony given by a witness before trial. The witness is placed under oath to tell the truth, and lawyers for each party may ask questions. The questions and answers are recorded by a court reporter and on videotape for your review. You may consider deposition testimony in the same way you would consider testimony actually given in court.

When you consider the evidence, you are permitted to draw from the facts that you find have been proven, such reasonable inferences as you feel are justified in the light of your experience. You should give any evidence such weight as in your judgment it is fairly entitled to receive.

The statements and arguments of the lawyers are not evidence. They are only intended to assist you in understanding the evidence. Similarly, the questions of the lawyers are not evidence.

Every defendant in a criminal case is presumed to be innocent. This presumption of innocence remains with the defendant throughout the trial unless and until the government has proven he is guilty beyond a reasonable doubt. This burden never shifts throughout the trial. The law does not require the defendant Ruben Oseguera Gonzalez to prove his innocence or to produce any evidence at all. If you find that the government has proven beyond a reasonable doubt every element of a particular offense with which Mr. Oseguera Gonzalez is charged, it is your duty to find him guilty of that offense. On the other hand, if you find the government has failed to prove any element of a particular offense beyond a reasonable doubt, it is your duty to find Mr. Oseguera Gonzalez not guilty of that offense.

The government has the burden of proving the defendant Ruben Oseguera Gonzalez guilty beyond a reasonable doubt. Now, in civil cases, it is only necessary to prove that a fact is more likely true than not, or, in some cases, that its truth is highly probable. In criminal cases such as this one, the government's proof must be more powerful than that. It must be beyond a reasonable doubt. Reasonable doubt, as the name implies, is a doubt based on reason—a doubt for which you have a reason based upon the evidence or lack of evidence in the case. If, after careful, honest, and impartial consideration of all the evidence, you cannot say that you are firmly convinced of the defendant's guilt, then you have a reasonable doubt.

Reasonable doubt is the kind of doubt that would cause a reasonable person, after careful and thoughtful reflection, to hesitate to act in the graver or more important matters in life. However, it is not an imaginary doubt, nor a doubt based on speculation or guesswork; it is a doubt based on reason. The government is not required to prove guilt beyond all doubt, or to a mathematical or scientific certainty. Its burden is to prove guilt beyond a reasonable doubt.

There are two types of evidence from which you may determine what the facts are in this case—direct evidence and circumstantial evidence. When a witness, such as an eyewitness, asserts actual knowledge of a fact, that

witness's testimony is direct evidence. On the other hand, evidence of facts and circumstances from which reasonable inferences may be drawn is circumstantial evidence.

Let me give you an example. Assume a person looked out a window and saw that snow was falling. If he later testified in court about what he had seen, his testimony would be direct evidence that snow was falling at the time he saw it happen. Assume, however, that he looked out a window and saw no snow on the ground, and then went to sleep and saw snow on the ground after he woke up. His testimony about what he had seen would be circumstantial evidence that it had snowed while he was asleep.

The law says that both direct and circumstantial evidence are acceptable as a means of proving a fact. The law does not favor one form of evidence over another. It is for you to decide how much weight to give to any particular evidence, whether it is direct or circumstantial. You are permitted to give equal weight to both. Circumstantial evidence does not require a greater degree of certainty than direct evidence. In reaching a verdict in this case, you should consider all of the evidence presented, both direct and circumstantial.

One of the questions you were asked when we were selecting this jury was whether the nature of the charges itself would affect your ability to reach a fair and impartial verdict. We asked you that question because you must not allow the nature of a charge to affect your verdict. You must consider only the evidence that has been presented in this case in reaching a fair and impartial verdict.

The weight of the evidence is not necessarily determined by the number of witnesses testifying for each side. Rather, you should consider all the facts and circumstances in evidence to determine which of the witnesses you believe. You might find that the testimony of a smaller number of witnesses on one side is more believable than the testimony of a greater number of witnesses on the other side or you might find the opposite.

The lawyers in this case sometimes objected when the other side asked a question, made an argument, or offered evidence that the objecting lawyer believed was not proper. You must not hold such objections against the lawyer who made them or the party he or she represents. It is the lawyers' responsibility to object to evidence that they believe is not admissible.

When, during the course of the trial, I sustained an objection to a lawyer's question, you should ignore the question, and you must not speculate as to what the answer would have been. Likewise, when, after a witness answered a question, in Spanish or English, and I ruled that the answer should be stricken, you should ignore both the question and the answer and they should play no part in your deliberations.

## EVALUATION OF TESTIMONY

In determining whether the government has proved the charges against the defendant beyond a reasonable doubt, you must consider the testimony of all the witnesses who have testified.

You are the sole judges of the credibility of the witnesses. You alone determine whether to believe any witness and the extent to which a witness should be believed. Judging a witness's credibility means evaluating whether the witness has testified truthfully and also whether the witness accurately observed, recalled, and described the matters about which the witness testified.

You may consider anything that in your judgment affects the credibility of any witness. For example, you may consider the demeanor and the behavior of the witness on the witness stand; the witness's manner of testifying; whether the witness impresses you as a truthful person; whether the witness impresses you as having an accurate memory; whether the witness has any reason for not telling the truth; whether the witness had a meaningful opportunity to observe the matters about which he or she has testified; whether the witness has any interest in the outcome of this case, stands to gain anything by testifying, or has friendship or hostility toward other people concerned with this case.

In evaluating the accuracy of a witness's memory, you may consider the circumstances surrounding the event, including the time that elapsed between the event and any later recollections of the event, and the circumstances under which the witness was asked to recall the details of the event.

You may consider whether there are any consistencies or inconsistencies in a witness's testimony or between the witness's testimony and any previous statements made by the witness. You may also consider any consistencies or inconsistencies between the witness's testimony and any other evidence that you credit. You may consider whether any inconsistencies are the result of lapses in memory, mistake, misunderstanding, intentional falsehood, or differences in perception.

You may consider the reasonableness or unreasonableness, the probability or improbability, of the testimony of a witness in determining whether to accept it as true and accurate. You may consider whether the witness has been contradicted or supported by other evidence that you credit.

If you believe that any witness has shown him or herself to be biased or prejudiced, for or against either side in this trial, or motivated by self-interest, you may consider and determine whether such bias or prejudice has colored the testimony of the witness so as to affect the desire and capability of that witness to tell the truth.

You should give the testimony of each witness such weight as in your judgment it is fairly entitled to receive.

Ruben Oseguera Gonzalez used the services of an interpreter in this trial. As I have previously instructed you, you should not be biased for or against Mr. Oseguera Gonzalez for using an interpreter. Do not permit that fact to influence you in any way.

The fact that the court has provided an interpreter to Mr. Oseguera Gonzalez does not mean that the court has made a ruling on the extent of his ability to speak or understand the English language. Use of an interpreter should not be considered evidence in this case.

You have heard testimony from several witnesses who communicated through an interpreter in this trial. You are to consider only the evidence provided through the official court interpreters. Although some of you may know Spanish, it is important that all jurors consider the same evidence. Therefore, you must base your decision on the evidence presented in the English interpretation. You must disregard any different meaning.

As I have previously instructed you, you should not be biased for or against anyone who uses an interpreter. Do not permit the fact that some of the witnesses used the services of an interpreter to influence you in any way. You should not consider the mere fact that these witnesses were provided an interpreter in evaluating their credibility. You must evaluate interpreted testimony as you would any other testimony. That is, you must not give interpreted testimony any greater or lesser weight than you would if the witness had spoken English.

If you observed that the witness using an interpreter nodded his or her head during interpretation, you should consider that this did not necessarily indicate agreement or an affirmative answer but may have only indicated that the witness was following the translation.

Even though you may not be able to understand what the witnesses said in Spanish, you may consider the demeanor, tenor, tone, and cadence of the witness in combination with the English translation when evaluating their credibility.

In this trial, documents in the Spanish language have been admitted into evidence along with English translations. As I said, although some of you may know Spanish, it is important that all jurors consider the same evidence. Therefore, you must accept the English translation contained in the transcript.

If, however, you have a question as to the accuracy of the English translation, you should bring this matter to my attention immediately. You should not ask your question or make any comment about the translation in the presence of the other jurors, or otherwise share your question or concern with any of them. I will take steps to see if your question can be answered and any discrepancy resolved. If, however, after such efforts a discrepancy remains, you must rely only upon the official English translation and not on your own translation.

You have heard evidence that several testifying witnesses—Oscar Nava Valencia, Mario Ramirez Travino, Jose Antonio Torres-Marrufo, Elpidio Mojarro Ramirez and Jesus Contreras Arceo—entered into a plea agreement with the government pursuant to which agreements those witnesses agreed to testify truthfully in this case and the government agreed to bring the witness's cooperation to the attention of his sentencing judge to consider whether to impose a more lenient sentence than that which the judge might otherwise impose.

The government is permitted to enter into this kind of plea agreement. You, in turn, may accept the testimony of such a witness and convict the defendant on the basis of this testimony alone, if it convinces you of the defendant's guilt beyond a reasonable doubt. A witness who has entered into a plea agreement is under the same obligation to tell the truth as any other witness; the plea agreement does not protect him against a prosecution for perjury or false statement, should he lie under oath.

However, you may consider whether a witness who has entered into such an agreement has an interest different from other types of witnesses.  You may consider whether the plea agreement the witness entered into with the government has motivated him to testify falsely against the defendant.  The testimony of a witness who has entered into a plea agreement should be considered with caution.  You should give the testimony as much weight as in your judgment it deserves.

You have heard evidence that one testifying witness, Herminio Gomez Ancira, is an informer for the U.S. Drug Enforcement Administration ("DEA").  He has an arrangement with the DEA to help the government obtain introductions to persons suspected of violating the law and to help the government obtain information.  In exchange, he receives money and other personal benefit, such as his ability to remain in this country with his family.  The use of such persons is a recognized means of detecting criminal conduct and the government is permitted to call such persons as witnesses.

However, when an informer testifies, his testimony should be considered with caution.  You may consider whether the benefit this person receives from the government has motivated him to testify falsely against the defendant.  You should give the testimony as much weight as in your judgment it deserves.

A law enforcement officer's testimony should be evaluated by you just as any other evidence in the case.  In evaluating the officer's credibility, you should use the same guidelines that you apply to the testimony of any witness.  In no event should you give either greater or lesser weight to the testimony of any witness merely because he or she is a law enforcement officer.

Every defendant in a criminal case has an absolute right not to testify.  Defendant Ruben Oseguera Gonzalez has chosen to exercise this right.  You must not hold this decision against him, and it would be improper for you to speculate as to the reason or reasons for his decision.  You must not assume the defendant is guilty because he chose not to testify.

In this case, you heard the testimony of Steve Paris, who is a Special Agent in the Los Angeles Field Division of the DEA.  He expressed opinions concerning common means and methods used by Mexican drug trafficking organizations and their use of coded language in communications, and the illegal manufacture and distribution of different controlled substances.

You also heard the testimony of John Miller, who is a Firearms Enforcement Officer in the Firearms and Ammunition Technology Division of the U.S. Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF").  He expressed opinions concerning the use of firearms by drug trafficking organizations and identification of particular kinds of firearms and destructive devices.

If scientific, technical, or other specialized knowledge might assist the jury in understanding the evidence or in determining a fact in issue, a witness who possesses knowledge, skill, experience, training, or education may testify and state an opinion concerning such matters.  You are not bound to accept this witness's opinion.  If you

find that the opinion is not based on sufficient education or experience, that the reasons supporting the opinion are not sound, or that the opinion is outweighed by other evidence, you may completely or partially disregard the opinion. You should consider this evidence with all the other evidence in the case and give it as much weight as you think it fairly deserves.

You have heard evidence that certain witnesses may have made a statement on an earlier occasion that may be inconsistent with his testimony here at trial. It is for you to decide whether the witness made such a statement and whether in fact it was inconsistent with the witness's testimony here. If you find such an inconsistency, you may consider the earlier statement in judging the credibility of the witness, but you may not consider it as evidence that what was said in the earlier statement was true.

You have heard evidence that several witnesses have been convicted of a crime. You may consider this conviction only in evaluating the credibility of that witness's testimony in this case.

You have heard evidence that two witnesses—Oscar Nava Valencia and Elpidio Mojarro Ramirez—are on supervised release, after being convicted of a crime and released from prison. You may consider this evidence when deciding whether the witness has a bias in favor of one of the parties that may affect his willingness to tell the truth.

You have heard evidence that defendant Ruben Oseguera Gonzalez engaged in crimes not charged in Count I or Count II. It is up to you to decide whether to accept that evidence.

You must first decide, without considering this evidence of other crimes at all, whether the government has proved beyond a reasonable doubt that an agreement existed to knowingly or intentionally distribute cocaine and methamphetamine knowing or intending that the drugs would be unlawfully imported into the United States. If you find that the government has proved beyond a reasonable doubt that an agreement existed, then you may consider the evidence that the defendant engaged in crimes not charged in Counts I or II.

If you find that Ruben Oseguera Gonzalez engaged in crimes not charged in Counts I or II, you may use this evidence for the limited purpose of determining whether the government has proved beyond a reasonable doubt that Mr. Oseguera Gonzalez knew of the unlawful purpose of the agreement and that he joined in the agreement knowingly and willfully, that is, with the intent to further its unlawful purpose.

You may also use this evidence for the limited purpose of deciding whether Mr. Oseguera Gonzalez had the motive, opportunity, intent, or knowledge to commit the charged offenses, whether he prepared or planned to commit the charged offenses, and whether there was an absence of mistake or lack of accident. You may also use this evidence in determining whether the government has proved beyond a reasonable doubt that Mr. Oseguera Gonzalez committed the charged offenses.

You may not use evidence of crimes not charged in Counts I or II for any other purpose. You may not use this evidence to conclude that he has a bad character, or that he has a criminal personality. The law does not allow you to convict Mr. Oseguera Gonzalez simply because you believe he may have done bad things not specifically charged as crimes in this case.

## CHARGES

Now I'm going to turn to the charges. At the beginning of the trial, I gave you preliminary instructions that generally described the two charges that the government has brought against the defendant Ruben Oseguera-Gonzalez in two separate counts.

Each charge in Counts One and Two is a separate offense. You should consider each offense, and the evidence which applies to it, separately, and you should return separate verdicts as to each count. The fact that you may find the defendant guilty or not guilty on any one count should not influence your verdict with respect to any other count except in ways I will describe to you in just a minute.

I will read those charges to you now and then explain the definitions of terms used in the charges and the elements of each charge. When no formal definition is provided for a term, please rely on your everyday understanding of the word.

### *Count One*

Count One charges that, from in or around 2007 and continuing to February 1, 2017, in the countries of Mexico, the United States and elsewhere, the defendant, Ruben Oseguera Gonzalez, together with others, both known and unknown, did knowingly, intentionally, and willfully conspire to distribute (1) five (5) kilograms or more of a mixture and substance containing a detectable amount of cocaine, a Schedule II controlled substance; and (2) five hundred (500) grams or more of a mixture and substance containing a detectable amount of methamphetamine, a Schedule II controlled substance, knowing and intending that such substances would be unlawfully imported into the United States from a place outside thereof, in violation of Title 21, Sections 959(a), 960 and 963, and Title 18, Section 2, of the United States Code.

With respect to the defendant, the controlled substances involved in the conspiracy attributable to him as a result of his own conduct, and the conduct of other conspirators reasonably foreseeable to him, is five (5) kilograms or more of a mixture and substance containing a detectable amount of cocaine and five hundred (500) grams or more of a mixture or substance containing a detectable amount of methamphetamine in violation of Title 21, United States Code, Sections 960(b)(1)(B) and 960(b)(1)(H), respectively.

There are several elements of the crime of conspiracy to distribute a controlled substance for importation into the United States, each of which must be proved beyond a reasonable doubt. The elements are:

- *First*, that from on or about the dates alleged in the charge, an agreement existed between the defendant and at least one other person to knowingly or intentionally distribute cocaine and methamphetamine knowing and intending that such substances would be unlawfully imported into the United States;

- *Second*, that the defendant knew of the unlawful purpose of the agreement. This means that the defendant realized what he was doing and was aware of the nature of his conduct, and did not act through ignorance, mistake, or accident; and

- *Third*, that the defendant joined in the agreement knowingly and willfully, that is, with the intent to further its unlawful purpose.

A conspiracy is a combination of two or more people to accomplish an unlawful purpose. The conspiracy or agreement itself is a separate offense from the crime that allegedly was planned. The government is not required to prove that the defendant committed an act in furtherance of the conspiracy or that the unlawful purpose of the conspiracy was achieved. The essence of the offense of conspiracy is the agreement to commit a crime, not the commission of overt acts in furtherance of the agreement. In Count One, the crime that is alleged to be the object of the conspiracy in this case is the distribution of the charged controlled substances knowing and intending that the controlled substances would be unlawfully imported into the United States.

A conspiracy can be proved indirectly, by facts and circumstances that lead to a conclusion that a conspiracy existed. The government must prove that such facts and circumstances existed and that they lead to the conclusion that a conspiracy existed. It is not essential that the government prove that the conspiracy began or ended on the specific date set forth in the charges. Rather, the government is required to prove beyond a reasonable doubt that, in fact, a conspiracy existed for some time within the period set forth in the charges and that the defendant intentionally joined in that agreement.

In determining whether a conspiracy existed and whether the defendant was a member, you may consider the acts and statements of any other member of the alleged conspiracy, done or made during the course of and in furtherance of the conspiracy, as evidence against the defendant. When persons enter into a conspiracy, they become agents for each other, so that the act or statement of one conspirator in furtherance of the conspiracy is considered the act or statement of all the other conspirators and is evidence against each and all of them. In such cases, such acts or statements of one conspirator during the existence and in furtherance of the conspiracy are considered to be the acts or statements of all the other conspirators and can be regarded as evidence against them all.

Mere presence at the scene of the agreement or of the crime, or merely being with the other participants, however, does not show that a defendant knowingly joined in the agreement. Also, unknowingly acting in a way that helps the participants, or merely knowing about the agreement itself, without more, does not make the defendant part of the conspiracy. The government must prove beyond a reasonable doubt that the defendant was part of the conspiracy.

*Definition*: To *distribute* means to transfer or attempt to transfer to another person a measurable or detectable amount of a controlled substance, voluntarily and on purpose, not by mistake or accident, and not necessarily in exchange for anything of value.

If you determine that the government has proven beyond a reasonable doubt that the defendant conspired to distribute cocaine and methamphetamine for importation into the United States, you must make a determination as to the quantity of the controlled substances for which the defendant is personally responsible, including the quantities of these controlled substances that were distributed by other conspirators in furtherance of the conspiracy and that were reasonably foreseeable to the defendant. The verdict form that I will tell you about later in these instructions asks you to determine whether the government has proven beyond a reasonable doubt whether a mixture or substance containing or including cocaine or methamphetamine exceeded specified quantities. Your determination of the quantity of cocaine and methamphetamine involved in the conspiracy must be unanimous, and you must be satisfied that the United States has proven the quantity of cocaine and methamphetamine beyond a reasonable doubt.

The government is not required to show that any of the alleged criminal acts occurred within the District of Columbia. The statute the defendant is charged with violating—Title 21, United States Code, Section 959—is intended to reach acts of "distribution committed outside the territorial jurisdiction of the United States" if the defendant intended or knew that the controlled substances being distributed would be imported into the United States. Federal law provides that alleged violations of Section 959 can be tried in the District of Columbia.

### *Count Two*

Count Two charges that, from in or about 2007, and continuing thereafter, up to and including the date of the filing of the charges on February 1, 2017, both dates being approximate and inclusive, pursuant to Title 18, United States Code, Section 3238, within the venue of the United States District Court for the District of Columbia, the defendant Ruben Oseguera Gonzalez, did knowingly and intentionally use, carry and brandish firearms, including destructive devices, during and in relation to one or more drug trafficking crimes, to wit: the crime charged in Count One, and did knowingly and intentionally possess firearms, including destructive devices, in furtherance of such drug trafficking crimes, in violation of Title 18, United States Code, Sections 924(c)(1)(A)(i), 924(c)(1)(A)(ii), 924(c)(1)(B)(ii), and Title 18, United States Code, Section 2.

The crime charged in Count Two has two elements:
- *First*, the defendant committed the crime of conspiracy to distribute controlled substances knowing and intending that they would be unlawfully imported into the United States, as charged in Count One; <u>and</u>
- *Second*, the defendant <u>either</u>:
  - (a) knowingly and intentionally used or carried firearms during and in relation to the crime charged in Count One, or:
  - (b) knowingly and intentionally possessed firearms in furtherance of that crime.

If you find the defendant guilty of this offense, you must next determine whether the government has proven beyond a reasonable doubt the additional facts: (1) that defendant brandished a firearm during and in relation to the crime charged in Count One; and/or (2) that at least one of the firearms was a destructive device.

While Count Two charges defendant with (1) knowingly and intentionally using, carrying and brandishing firearms during and in relation to the drug trafficking crime charged in Count One, **and** (2) knowingly and intentionally possessing firearms in furtherance of such drug trafficking crime, the government is only required to prove the acts in *either* (1) or (2). In addition, while Count Two charges defendant with knowingly and intentionally using, carrying and brandishing firearms during and in relation to the drug trafficking crime charged in Count One, the government is only required to prove acts establishing using or carrying or brandishing.

*Definitions*:

To "*use*" a firearm means to employ the firearm actively, such as to brandish, display, strike with, discharge or attempt to discharge it, or even to refer to it in a way calculated to affect the underlying crime.

To "*carry*" a firearm means to move or transport the firearm on one's person or in a vehicle or container. It need not be immediately accessible.

To "*brandish*" a firearm means to display all or part of the firearm, or otherwise make the presence of the firearm known to another person, in order to intimidate that person, regardless of whether the firearm is directly visible to that person.

For use or carry or brandish to be "*during and in relation to*" a crime, the firearm or destructive device must have played a role in the crime or must have been intended by the defendant to play a role in the crime. That need not have been its only purpose, however.

A person possesses a firearm or destructive device "*in furtherance of*" a crime if the firearm or destructive device possession made the commission of the underlying crime easier, safer or faster, or in any other way helped the defendant commit the crime. There must be some connection between the firearm and the underlying crime, but the firearm need not have been actively used during the crime.

A "*destructive device*" is any explosive, incendiary, or poison gas—that is, bomb, grenade, rocket having a propellant of more than four ounces, missile having an explosive or incendiary charge of more than one-quarter ounce, mine, or device similar to any of the devices described above. It also includes any type of weapon (other than a shotgun or shotgun shell) by whatever name known which will, or which may be readily converted to, expel a projectile by the action of an explosive or other propellant, and which has any barrel with a bore of more than one-half inch in diameter.

*"Possession"* means to have physical possession or to otherwise exercise control over tangible property. A person may possess property in either of two ways. First, the person may have physical possession of it by holding it in his or her hand or by carrying it in or on his or her body or person. This is called "actual possession." Second, a person may exercise control over property not in his or her physical possession if that person has both the power and the intent at a given time to control the property. This is called "constructive possession." In addition, the law recognizes the possibility that two or more individuals can jointly have property in their constructive possession. Two or more persons have property in their joint constructive possession when they each have both the power and the intent at a given time to control the property. Mere presence near something or mere knowledge of location, however, is not enough to show possession. To prove possession of a firearm or destructive device against Ruben Oseguera Gonzalez in this case, the government must prove beyond a reasonable doubt that he had either actual or constructive possession of it.

### **Aiding and Abetting**

You may find Ruben Oseguera Gonzalez guilty of the crime charged in Count Two without finding that he personally committed each of the acts that make up the crime or that he was present while the crime was being committed. A person who in some way intentionally participates in the commission of a crime can be found guilty either as an aider and abettor or as a principal offender. It makes no difference which label you attach. The person is as guilty of the crime as he would be if he had personally committed each of the acts that make up the crime.

To find that a defendant aided and abetted in committing a crime, you must find that the defendant knowingly associated himself with the commission of the crime, that he participated in the crime as something he wished to bring about, and that he intended by his actions to make it succeed. Some affirmative conduct by the defendant in planning or carrying out the crime is necessary. Mere physical presence by Ruben Oseguera Gonzalez at the place and time the crime is committed is not by itself sufficient to establish his guilt. It is not necessary that you find that Ruben Oseguera Gonzalez was actually present while the crime was committed.

The government is not required to prove that anyone discussed or agreed upon a specific time or method of committing the crime. The government is not required to prove that the crime was committed in the particular way planned or agreed upon. Nor need the government prove that the principal offender and the person alleged to be the aider and abettor directly communicated with each other.

To find that Ruben Oseguera Gonzalez aided and abetted in committing Count Two, you must find that he personally acted with knowledge that the firearms were used, carried, brandished, or possessed. However, it is not necessary for the government to prove that the defendant knew that one or more of the firearms was a destructive device.

It is not necessary that all the people who committed the crime be caught or identified. It is sufficient if you find beyond a reasonable doubt that the crime was committed by someone and that the defendant knowingly and intentionally aided and abetted in committing the crime.

If you find beyond a reasonable doubt that the defendant is guilty of the conspiracy charged in Count One, you may find Ruben Oseguera Gonzalez guilty of the crime charged in Count Two without finding that he personally committed each of the acts constituting the offense or was personally present at the commission of the offense, in one of two ways. First, a defendant is responsible for an act which he willfully causes to be done if the act would be criminal if performed by him directly or by another. To "cause" an act to be done means to bring it about. You may convict Ruben Oseguera Gonzalez of the offense charged in Count Two if you find that the government has proved beyond a reasonable doubt each element of the offense and that Ruben Oseguera Gonzalez willfully caused such an act to be done, with the intent to commit the crime.

Second, a conspirator is responsible for offenses committed by other conspirators if the conspirator was a member of the conspiracy when the offense was committed and if the offense was committed in furtherance of, and as a foreseeable consequence of, the conspiracy. Therefore, if you find beyond a reasonable doubt that during the time the defendant was a member of the conspiracy charged in Count One, other conspirators committed the offense in Count Two both in furtherance of and as a foreseeable consequence of that conspiracy, then you may find the defendant guilty of Count Two, even though the defendant may not have participated in any of the acts which constitute the offense described in Count Two.

A person's willfulness, intent, or knowledge ordinarily cannot be proved directly, because there is no way of knowing what a person is actually thinking, but you may infer someone's willfulness, intent, or knowledge from the surrounding circumstances. You may consider any statement made or acts done or omitted by Ruben Oseguera Gonzalez, and all other facts and circumstances received in evidence which indicate his willfulness, intent, or knowledge.

You may infer, but are not required to infer, that a person intends the natural and probable consequences of acts he intentionally did or intentionally did not do. It is entirely up to you to decide what facts to find from the evidence received during this trial. You should consider all the circumstances in evidence that you think are relevant in determining whether the government has proved beyond a reasonable doubt that Ruben Oseguera Gonzalez acted with the necessary state of mind.

The word "knowingly," as that term is used in these instructions, means that the act was done voluntarily and intentionally, not because of mistake or accident.

The defendant is charged with the offenses of conspiring to distribute five kilograms or more of cocaine and five hundred grams or more of methamphetamine for importation into the United States beginning "from in or around 2007"; and using, carrying, and brandishing firearms during and in relation to the drug trafficking conspiracy; and possessing firearms in furtherance of the drug trafficking conspiracy beginning "from in or about 2007." The proof need not establish with certainty the exact dates of the alleged offense. It is sufficient if the evidence in the

case establishes beyond a reasonable doubt that the offense was committed on a date reasonably near the date alleged.

## DELIBERATIONS AND LOGISTICAL MATTERS

I'm going to discussed now some guidance for your deliberations and certain logistical matters.

As I mentioned, I will provide you with a copy of my instructions.  During your deliberations, you may if you want, refer to these instructions.  While you may refer to any particular portion of the instructions, you are to consider the instructions as a whole and you may not follow some and ignore others.  If you have any questions about the instructions, you should feel free to send me a note.  Please return your instructions to me when your verdict is rendered.

A verdict must represent the considered judgment of each juror, and in order to return a verdict, each juror must agree on the verdict.  In other words, your verdict on each count must be unanimous.

You will be provided with a Verdict Form for use when you have concluded your deliberations.  The form is not evidence in this case, and nothing in it should be taken to suggest or convey any opinion by me as to what the verdict should be.  Nothing in the form replaces the instructions of law I have already given to you, and nothing in it replaces or modifies the instructions about the elements which the government must prove beyond a reasonable doubt.  The form is meant only to assist you in recording your verdict.

During the course of this trial, a number of exhibits were admitted in evidence.  Sometimes only portions of an exhibit were admitted, such as a document with some words or pictures blacked out in part or otherwise removed.  There are a variety of reasons why only a portion of an exhibit is admitted, including that the other portions are inadmissible or implicate an individual's privacy.  As you examine the exhibits, and you see or hear portions where there appear to be omissions, you should consider only the portions that were admitted.  You should not guess as to what has been taken out or why, and you should not hold it against either party.  You are to decide the facts only from the evidence that is before you.

I will be sending into the jury room with you the exhibits that have been admitted into evidence.  You may examine any or all of them as you consider your verdict.  Please keep in mind that exhibits that were only marked for identification but were not admitted into evidence will not be given to you to examine or consider in reaching your verdict.

When you return to the jury room, you should first select a foreperson to preside over your deliberations and to be your spokesperson here in court.  There are no specific rules regarding how you should select a foreperson.  That is up to you.  However, as you go about the task, be mindful of your mission—to reach a fair and just verdict based on the evidence.  Consider selecting a foreperson who will be able to facilitate your discussions, who can help you organize the evidence, who will encourage civility and mutual respect among all of you, who will invite

each juror to speak up regarding his or his views about the evidence, and who will promote a full and fair consideration of that evidence.

The question of possible punishment of the defendant in the event of a conviction is not a concern of yours and should not enter into or influence your deliberations in any way. The duty of imposing sentence in the event of a conviction rests exclusively with me. Your verdict should be based solely on the evidence in this case, and you should not consider the matter of punishment at all.

I would like to remind you that, in some cases, there may be reports on the Internet, television, radio, or newspaper concerning this case. You may be tempted to read, listen to, or watch it. You must not read, listen to, or watch such reports because you must decide this case solely on the evidence presented in this courtroom. If any publicity about this trial, which I don't expect, inadvertently comes to your attention, do not discuss it with your fellow jurors or anyone else. Just let my courtroom deputy or the court security officer know as soon as you can after it happens, and I will then briefly discuss it with you.

As you retire to the jury room to deliberate, I also wish to remind you of an instruction I gave you at the beginning of the trial. During your deliberations, you must not communicate with or provide any information to anyone by any means about this case. You may not use any electronic device or media, such as a phone, smart phone, iPhone, computer, tablet, the Internet, any Internet service, any text or instant messaging service, any Internet chat room, blog, or social media service such as Facebook, LinkedIn, YouTube, Twitter (I guess it's called "X" now), or Instagram to communicate to anyone any information about this case or to conduct any research about this case until I accept your verdict. In other words, you cannot talk to anyone on the phone, correspond with anyone, or electronically communicate with anyone about this case. You may only discuss the case in the jury room with your fellow jurors during deliberations. I expect you will inform me as soon as you become aware of another juror's violation of these instructions.

You may not use these electronic means to investigate or communicate about the case because it is important that you decide this case based solely on the evidence presented in this courtroom. Information on the Internet or available through social media might be wrong, incomplete, or inaccurate, and you are only permitted to discuss the case with your fellow jurors during deliberations because they have seen and heard the same evidence as you. In our judicial system, it is important that you are not influenced by anything or anyone outside of this courtroom. Otherwise, your decision may be based on information known only by you and not your fellow jurors or the parties in the case. This would unfairly and adversely impact the judicial process.

If it becomes necessary during your deliberations to communicate with me, you may send a note by the court security officer who will be stationed outside the jury room during your deliberations. The note should be signed by your foreperson or one or more members of the jury. No member of the jury should try to communicate with me about the case except by such a signed note, and I will never communicate with any member of the jury on any matter concerning the merits of this case, except in writing or orally here in open court.

Bear in mind also that you are never, under any circumstances, to reveal to any person—not my courtroom deputy, not the court security officer, and not me—how jurors are voting until after you have reached a unanimous verdict. This means that you should never tell me, in writing or in open court, how the jury is divided on any matter—for example, 6-6 or 7-5 or 11-1, or in any other fashion—whether the vote is for conviction or acquittal or on any other issue in the case.

Now the attitude and conduct of jurors at the beginning of their deliberations are matters of considerable importance. It may not be useful for a juror, upon entering the jury room, to voice a strong expression of an

opinion on the case or to announce a determination to stand for a certain verdict. When one does that at the outset, a sense of pride may cause that juror to hesitate to back away from an announced position after a discussion of the case. Furthermore, many juries find it useful to avoid an initial vote upon retiring to the jury room. Calmly reviewing and discussing the case at the beginning of deliberations is often a more useful way to proceed. Remember that you are not partisans or advocates in this matter, but you are judges of the facts.

Now the last thing I must do before the jury begins deliberations is to excuse the alternate jurors. As I told you before, the selection of alternates was an entirely random process; it is nothing personal. We selected two seats to be the alternate seats before any of you entered the courtroom. Since the rest of you have remained healthy and attentive, I can now excuse those jurors in **seat numbers 13 and 14**.

Before you two alternate jurors leave, I am going to ask you to tear out a page from your notebook, and to write down your name and daytime phone number and hand this to Mr. Coates. I do this because it is possible, though unlikely, that we will need to summon you back to rejoin the jury in case something happens to a regular juror during deliberations. Since that possibility exists, I am also going to instruct you not to discuss the case with anyone until we call you. My earlier instruction on use of the Internet applies; do not research this case or communicate about it on the Internet. In all likelihood, Mr. Coates will be calling you to tell you that there has been a verdict and you are now free to discuss the case; there is, however, the small chance that we will need to bring you back on to the jury. Thank you both very much for your service.

*    *    *

**That concludes my final instructions. You may now return to the jury room to begin your deliberations**.